# Exhibit C



Solicitor of Labor
U.S. Department of Labor
Room N-2420
200 Constitution Avenue, NW Room N2420
Washington, DC 20210
foiaappeal@dol.gov

March 1, 2018

VIA U.S. MAIL AND ELECTRONIC DELIVERY

**Re: Freedom of Information Act Appeal FOIA No. 850309**

To Whom It May Concern:

    The Center for Investigative Reporting ("CIR") hereby writes to appeal on behalf of the requester, Ms. Jennifer Gollan, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 from a denials sent by Occupational Safety and Health Administration ("OSHA") a division of the Department of Labor ("DOL") on February 22, 2018, involving disclosure of OSHA's Forms 300 or 301 ("OSHA Forms").

### I. Factual Background

    OSHA's purpose is to "require employers to record and report work-related fatalities, injuries, and illnesses." 29 C.F.R. § 1904.0. Under OSHA's Final Rule, companies with 250 or more employees and certain organizations in high-risk industries with 20 or more employees were required to electronically submit their 2016 summary Form 300As to OSHA by December 31, 2017. *See* 81 Fed. Reg. at 29625 (as amended by 82 Fed. Reg. 55761, 55764 (Nov. 24, 2017), and further amended by OSHA's press release dated December 18, 2018, https://www.osha.gov/news/newsreleases/trade/12182017). These same employers are required to submit information for 2017 injury and illness records from Forms 300, 301, and 300A—by July 1, 2018. The Final Rule states that "OSHA intends to post the establishment-specific injury and illness data it collects under this final rule on its public Web site at www.osha.gov." 81 Fed. Reg. at 29625. OSHA has stated that such reporting "does not mean that the employer or employee was at fault." *Id.*

## II. Procedural History

On January 31, 2018 Ms. Gollan submitted a FOIA request to OSHA (hereinafter "the Request") seeking records pertaining OSHA's Forms. A true and correct copy of that letter is attached as Exhibit A. More specifically, it requested that OSHA "provide all data submitted since August 1, 2017 through OSHA's 'Injury Tracking Application' pursuant to the Final Rule 'Improve Tracking of Workplace Injuries and Illnesses.'" *Id.* It added, "include electronically submitted information from OSHA Forms 300, 300A, and 301." *Id.*

On February 22, 2018, Ms. Gollan received a letter denying her request (hereinafter "the Denial"). A true and correct copy of that letter is attached as Exhibit B. The denial stated, "OSHA does not have any records pertaining to OSHA Forms 300 or 301." *Id.* It continued, "OSHA has identified approximately 237,000 records that meet the criteria of your request. We are denying your request under Exemption 7(E) of FOIA." *Id.* It explained, "Exemption 7(E) affords protection to all law enforcement information that 'would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, 5. U.S.C. 552(b)(7)(E)." It further explained, "OSHA plans to use the establishment-specific data for enforcement targeting purposes" and therefore release would disclose "OSHA's techniques and procedures for law enforcement" therefore the Form 300A information is exempt." *Id.*

CIR now appeals. This appeal is timely according to 29 C.F.R. § 70.

## III. Exemption 7(E) is inapplicable to the requested OSHA Forms.

FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (internal citations and quotation marks omitted). Under FOIA Exemption 7(E), an agency may only withhold information if it was compiled for law enforcement purposes and release could "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Here, the OSHA cannot meet its burden to show that the withheld information is exempt under Exemption 7(E) because the records were not compiled for law enforcement purposes, the release would not disclose law enforcement techniques and procedures, and disclosure could not logically be expected to risk circumvention of the law.

### A. Withholding is improper under Exemption 7 because the records were not compiled for law enforcement purposes.

Exemption 7 applies only to "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "According to the Supreme Court, the term 'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 155 (1989)). An agency must demonstrate that the withheld information was "compiled for law enforcement" purposes by establishing a "rational nexus" between "enforcement of a federal law and the document for which" the exemption is claimed. *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995). "[T]he focus is on how and under what circumstances the requested files were compiled." *United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 45 (D.D.C. 2008) (quoting *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002). Courts will "scrutinize with some skepticism the particular purpose claimed" if the agency has a mixed law enforcement and administrative functions. *Tax Analysts*, 294 F.3d at 77.

Thus, the key question for the analysis is what the purpose of the documents are at the time they were compiled. *See Sladek v. Bensinger*, 605 F.2d 899, 903 (5th Cir. 1979) (holding Exemption 7 inapplicable to DEA manual that "was not compiled in the course of a specific investigation"); *Cox v. United States Dep't of Justice*, 576 F.2d 1302, 1310 (8th Cir. 1978) (same). For example, "[D]ocuments compiled for purposes of internal discipline of employees are not compiled for law enforcement purposes." *Linn v. United States Dep't of Justice*, No. 92-1406, 1995 WL 631847, at *22 (D.D.C. Aug. 22, 1995), appeal dismissed voluntarily, No. 97-5122 (D.C. Cir. July 14, 1997).

Here, there is no rational nexus that shows the requested records were compiled for law enforcement purposes when they were compiled. To the contrary, OSHA Forms are produced as a matter of course under a regulatory requirement that demands they be openly published in the business establishments. While the records may tangentially be used in an investigation at some possible point in the future – this fact does not change the analysis. Indeed, given OSHA's mixed law enforcement and administrative functions, courts are likely to scrutinize with some skepticism OSHA's claimed law enforcement exemption. Instead, like the disciplinary documents in *Linn*, courts are likely to find the requested documents are not compiled for the purpose of investigating, but simply fulfill an obligation for creating transparent and safe working environment.

### B. Releasing the requested OSHA Forms would not disclose law enforcement techniques and procedures protected under Exemption 7(E).

To employ Exemption 7(E), the agency must first identify a technique or procedure that would be disclosed through the release of records. Even then, Exemption 7(E) only exempts investigative techniques "not generally known to the public."

1400 65th, Suite 200 Emeryville, CA 94608
PHONE 510 809 3160                TWITTER @CIRonline
WEB cironline.org

*Rosenfeld*, 57 F.3d at 815. Moreover, if a generally known technique or procedure is identified, the record must do more than merely discuss "the application of" the publicly known technique. *Id.* Only if a record describes a "specific means . . . rather than an application" of a particular technique, will the record be exempt from disclosure under FOIA. *Hamdan v. U.S. Dep't. of Justice*, 797 F.3d 759, 777–78 (9th Cir. 2015).

Applying these standards, the Ninth Circuit has only upheld 7(E) withholdings in cases where records clearly describe specific techniques and procedures. In *Hamdan* the Circuit held that the Federal Bureau of Investigation properly withheld records that described specific means of carrying out surveillance and conducting credit searches. 797 F.3d at 777–78. Similarly, in *Bowen v. FDA* the Ninth Circuit upheld withheld records about how law enforcement agents specifically trace cyanide. 925 F.2d 1225, 1229 (9th Cir. 1991). In contrast, in *Rosenfeld* the Circuit held that records disclosing the use of a particular individual's identity to make a pretext phone call merely described the application of a generally known investigative technique and so were not subject to Exemption 7(E). 57 F.3d at 815. *See also ACLU of N. Cal. v. U.S. Dep't of Justice*, — F.3d — (9th Cir. Jan 18, 2018).

Here, the agency has not identified any techniques or procedures that would be revealed by disclosure. Moreover, any techniques or procedures revealed in disclosing the documents are already known to the public and therefore not exempt. In fact, the agency regulations already mandates that employers publicly post Form 300As in the workplace and DOL has stated that it will publish all of the Form 300As on its website for public consumption. Therefore, at most any sensitive information revealed would merely be a disclosure of a generally known technique – which is not exempt under 7(E).

### C. Disclosure of the requested records cannot reasonably be expected to risk circumvention of the law.

An agency seeking to withhold records under Exemption 7(E) must "logically" show how releasing the requested information would "create a risk of circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To clear that bar, the agency must show that release of a document might increase the risk "that a law will be violated or that past violators will escape legal consequences." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) (quoting *PHE, Inc. v. DOJ*, 983 F.2d 248, 251 (D.C. Cir. 1993)). While this threshold is not often required, *Hamdan*, 797 F.3d at 777, generally, courts are unlikely to find a risk of circumvention of the law—if the requested records do not discuss actual law enforcement procedures. *See Families for Freedom v. U.S. Customs & Border Prot.*, No. 10 Civ. 2705 (SAS), 2011 WL 6780896 at *8 (S.D.N.Y. Dec. 27, 2011) (holding that U.S. Customs and Border Protection failed to explain how disclosing its official definition of types of transit nodes and/or historical staffing statistics could be expected to risk circumvention of the law).

Here, OSHA has not stated how disclosure would risk circumvention of the law – and for good reason. Any claim that disclosure of the Forms poses a risk of

circumvention of the law is wholly illogical. Disclosing the OSHA Forms would not reveal any techniques or procedures. Indeed, the only possible circumvention of that law in this instance would originate from the companies who are required to disclose and publicly post this information in any event. Moreover, the regulations requiring the disclosure of the OSHA Forms were intended to prevent circumvention of the law. For instance, it "is undeniable that the Publication of worker injury and illness data will encourage employers to prevent injuries and illnesses among their employees through several mechanisms. 81 Fed. Reg. at 29629-30, 29631; *see also id.* (listing seven different ways through which the public disclosure will lead to fewer workplace injuries).

## IV.     Conclusion

In conclusion, DOL should remand to OSHA with instruction to release all relevant information immediately. Should OSHA need clarification as to any aspect of the Request, it may reach me at vbaranetsky@revealnews.org or (510) 982-2890.

Sincerely,

Victoria D. Baranetsky
General Counsel
The Center for Investigative Reporting


cc: Jennifer Gollan