D. Victoria Baranetsky (Cal. Bar No. 311892)
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and JENNIFER GOLLAN, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR, <br><br> Defendant. | Case No. 4:18-cv-02414-DMR <br><br> **OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND NOTICE OF CROSS MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT** <br><br> Date:  December 12, 2019 <br> Time: 1:00 p.m. <br> Place: Courtroom 4, 3rd Floor <br> The Hon. Donna M. Ryu |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ii

NOTICE OF MOTION AND MOTION ........................................................................VIII

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.   INTRODUCTION ........................................................................................................1

II.   STATEMENT OF FACTS ...........................................................................................2

   A.   DOL REQUIRES FEDERAL CONTRACTORS TO SUBMIT WORK INJURY AND ILLNESS REPORTS TO ENSURE SAFETY.....................................................................................................................2

   B.   WORK INJURY AND ILLNESS REPORTS ARE NOT CONFIDENTIAL. .........................................5

     1.   OSHA Mandates Work Injury and Illness Reports Are Made Available to the Public. ....5

     2.   OSHA Previously Released Identical Records to CIR and Other FOIA Requesters.........6

     3.   Employees Have Routinely Published Work Injury and Illness Reports Disclosed by Companies. ......................................................................................................................................7

   C.   THE PUBLIC HAS A STRONG INTEREST IN WORK INJURY AND ILLNESS REPORTS. ..................7

   D.   CIR'S FOIA REQUEST AND ADMINISTRATIVE APPEAL .......................................................8

III.   ARGUMENT...............................................................................................................10

   A.   THE FREEDOM OF INFORMATION ACT AND THE STANDARD OF REVIEW...............................10

   B.   CIR IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE GOVERNMENT HAS IMPROPERLY WITHHELD WORK INJURY AND ILLNESS REPORTS UNDER EXEMPTION 4. ...................................11

     1.   Work Injury and Illness Reports are improperly withheld under Exemption 4 because they are not commercial. ...............................................................................................................12

     2.   Work Injury and Illness Reports are improperly withheld under Exemption 4 because they are not confidential. ..............................................................................................................14

   C.   CIR IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE GOVERNMENT HAS FAILED TO MEET THE FORESEEABLE HARM STANDARD ...............................................................................22

     1.   Even if Exemption 4 applies in this case, the government has not shown that Exemption 4's protected interests will be harmed by the disclosure.............................................................23

     2.   Even if protected interests could be harmed by disclosure, such a harm is not "reasonably foreseeable." .................................................................................................................................24

   D.   OSHA HAS FAILED TO DEMONSTRATE IT PERFORMED AN ADEQUATE SEARCH...................24

   E.   IF RESPONSIVE RECORDS CONTAIN EXEMPT AND NON-EXEMPT PORTIONS, THE LATTER MUST BE DISCLOSED WITH REDACTIONS...............................................................................................25

IV.   CONCLUSION...........................................................................................................25

-ii-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

# TABLE OF AUTHORITIES

## STATUTES

5 U.S.C. § 522(a)(6)(E) ........................................................................................ 9

5 U.S.C. § 552(a)(4)(A) ........................................................................................ 9

5 U.S.C. § 552(a)(4)(B) ...................................................................................... 10

5 U.S.C. § 552(a)(6)(A) ...................................................................................... 10

5 U.S.C. § 552(a)(8)(A). ............................................................................. 2, 23, 25

5 U.S.C. § 552(b)(4) ........................................................................... viii, 1, 11, 23

5 U.S.C. § 552(b)(7)(E) ........................................................................................ 9

## CASES

*Am. Small Bus. League v. Dep't of Def.*, 372 F. Supp. 3d 1018 (N.D. Cal. 2019) ......................... 25

*Citizens Comm'n on Human Rights v. Food & Drug Admin., Eli Lilly & Co.*, No. 92-CV-5313, 1993 WL 1610471 (C.D. Cal. May 10, 1993) ......................... 12

*Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976) ...................................... 10

*Finkel v. U.S. Dep't of Labor*, No. 05-55255, 2007 WL 1963163 (D.N.J. June 29, 2007) ........ 17, 20

*Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2365 (2019) ................................... passim

*Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*, 750 F.2d 1394 (7th Cir. 1984) ..................... 21

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93 (D.D.C. 2019) ..................... 23

*Julian v. Dep't of Justice*, 806 F.2d 1411 (9th Cir. 1986) .............................. 15

*Kentucky v. King*, 563 U.S. 452 (2011) ............................................. 24

*Lahr v. NTSB*, 569 F.3d 964 (9th Cir. 2009) .......................................... 11

*Lane v. Dep't of the Interior*, 523 F.3d 1128 (9th Cir. 2008) ......................... 11

*Machado Amadis v. Dep't of Justice*, 388 F. Supp. 3d 1 (D.D.C. 2019) ................. 23

*Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082 (9th Cir. 1997) ........... 15

*Martech USA, Inc. v. Reich*, No. C-93-4137 EFL, 1993 WL 1483700 (N.D. Cal. Nov. 24, 1993). 21

-iii-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

*McCash v. CIA*, No. 5:15-CV-02308-EJD, 2016 WL 6650389 (N.D. Cal. Nov. 10, 2016)............ 24

*Merit Energy Co. v. U.S. Dep't of Interior*, 180 F.Supp.2d 1184 (D. Colo. 2001) ........................ 13

*Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp 2d 1086 (C.D. Cal. 2005) ................. 24

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002)..................................... 12

*Nat'l Bus. Aviation Ass'n, Inc. v. FAA*, 686 F.Supp.2d 80 (D.D.C. 2010) ...............................13, 14

*Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974)............................... 11

*Nat'l Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976)............................ 22

*New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43 (1st Cir. 2015) ................................................................................................................................13, 14

*New York Times Co. v. U.S. Dep't of Labor*, 340 F. Supp 2d 394 (S.D.N.Y. 2004)............17, 18, 20

*OSHA Data/CIH v. U.S. Dep't of Labor*, 220 F.3d 153 (3rd Cir. 2000) ........................................ 18

*Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143 (9th Cir. 2008)............................................ 25

*Pub. Citizen Health Research Grp. v. Acosta*, 363 F. Supp. 3d 1 (D.D.C. 2018)........................... 21

*Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280 (D.C. Cir. 1983) 11, 12, 22, 23

*Pub. Citizen v. United States Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81 (D.D.C. 2013) ...................................................................................................................................... 12

*Public Citizen Foundation v. U.S. Dep't of Labor, et al.*, No. 18-cv-000117 (D.D.C.)................. 10

*Reyn's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006)..................................... 10

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) .................................................................... 14

*Sakamoto v. EPA*, 443 F. Supp. 2d 1182 (N.D. Cal. 2006) ......................................................... 24

*Skybridge Spectrum Found. v. Fed. Commc'ns Comm'n*, No. 10-01496, 2012 WL 336160 (D.D.C. 2012) ....................................................................................................................................... 13

*State of N.D. ex rel. Olson v. Andrus*, 581 F.2d 177 (8th Cir. 1978)............................................ 15

*United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557 (D.C. Cir. 2010) .................................. 21

*Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189 (9th Cir. 2011) ..........11, 12, 13

*Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681 (9th Cir. 2012) .......................................... 24

# REGULATIONS

29 C.F.R. § 1904 ........................................................................................................ 4, 17

29 C.F.R. § 1904.0 ...................................................................................................... 2, 3

29 C.F.R. § 1904.32(a) ................................................................................................. 17

29 C.F.R. § 1904.35 .............................................................................................. 4, 7, 18

29 C.F.R. § 1904.41 ......................................................................................................... 2

29 C.F.R. § 70.25(c)(3) ................................................................................................... 9

29 C.F.R. §§ 1904.35(b)(1) ........................................................................................... 19

# RULES

Improve Tracking of Workplace Injuries and Illnesses, 78 Fed. Reg. 67,254 (Nov. 8, 2013) (to be
  codified at 29 C.F.R. §§ 1904, 1952) ....................................................... 14, 16, 22

Improve Tracking of Workplace Injuries and Illnesses, 81 Fed. Reg. 29624 (May 12, 2016) (to be
  codified at 29 C.F.R. §§ 1902, 1904) ..................................................................... passim

Improve Tracking of Workplace Injuries and Illnesses: Delay of Compliance Date, 82 Fed. Reg.
  55,761 (Nov. 24, 2017) (to be codified at 19 CFR § 1904) ........................................ 4

Modernization of OSHA's Injury and Illness Data Collection Process, 75 Fed. Reg. 24,505 (May 5,
  2010) (to be codified at 29 C.F.R. § 1904) ............................................................. 15

Tracking of Workplace Injuries and Illnesses, 84 Fed. Reg. 380 (Jan. 25, 2019) (to be codified at
  19 C.F.R. § 1904) ................................................................................................. passim

# OTHER AUTHORITIES

*Bartlett Grain Elevator Inspection Reports*, MUCKROCK, https://www.muckrock.com/foi/united-
  states-of-america-10/bartlett-grain-elevator-inspection-reports-2917/#file-8571 ......................... 6

Brief for AI Now Inst. et. al. as Amici Curiae Supporting Respondents, Food Marketing Inst. v.
  Argus Leader Media, 139 S. Ct. 2356 (2019) (No. 18-481) ...................................... 14

Bruce Rolfsen, *Employers' OSHA Injury Records Sought by Workers' Rights Group*, BLOOMBERG
  ENV'T, Jan. 23, 2018, https://news.bloombergenvironment.com/safety/employers-osha-injury-
  records-sought-by-workers-rights-group ............................................................... 8

Caroline O'Donovan, *In Blue Apron's Chaotic Warehouses, Making Dinner Easy Is Hard Work*, BUZZFEED, Oct. 2, 2016, https://www.buzzfeed.com/carolineodonovan/the-not-so-wholesome-reality-behind-the-making-of-your-meal?utm_term=.wmboxDdlO#.ynKmlOvXD .................... 8

Christopher Kuhagen & Erik Hanley, *Police ID worker who died in a fall at the Oak Creek Amazon facility construction site*, MILWAUKEE JOURNAL-SENTINEL, July 10, 2019, https://www.jsonline.com/story/communities/south/news/oak-creek/2019/07/10/worker-oak-creek-amazon-construction-site-dies-fall/1695478001/ ............................................ 19

*Custom*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/custom?src=search-dict-hed ................................................................................................................. 15

Don Behm, *Machine failure blamed for injuring 8 workers at Saukville foundry*, MILWAUKEE-WISCONSIN J. SENTINEL, May 20, 2014, http://archive.jsonline.com/news/ozwash/machine-failure-blamed-for-injuring-7-workers-at-saukville-foundry-b99274108z1-259929331.html/ ..... 8

Jennifer Gollan, *He said Goodyear rule kept machines on during repair. He died fixing one.*, REVEAL, Dec. 20, 2017, https://www.revealnews.org/article/he-said-goodyear-rule-kept-machines-on-during-repair-he-died-fixing-one/ .......................................................................... 8

Jennifer Gollan, *The Deadly Danger of Trump's Naval Buildup Plan*, REVEAL, Feb. 10, 2017, https://www.revealnews.org/article/deadly-danger-naval-buildup/ ............................................ 7

Jennifer Gollan, *Treading Dangerously: Lax Safety Inside Goodyear's Tire Plants,* REVEAL, Dec. 14, 2017, https://www.revealnews.org/article/treading-dangerously-lax-safety-inside-goodyears-tire-plants/ ................................................................................................................. 6

OSHA, Injury Tracking Application ("ITA"), https://www.osha.gov/injuryreporting .................... 5

OSHA, *All About OSHA*, https://www.osha.gov/Publications/all_about_OSHA.pdf ...................... 3

OSHA, FOIA Report – CY2017 (2017), https://www.osha.gov/sites/default/files/CY2017_FOIA_Log.xlsx ............................................. 6

OSHA, FOIA Report – Q42018 (2018), https://www.osha.gov/sites/default/files/incomingrequests_06012018_12312018.xlsx ............... 6

OSHA, *U.S. Department of Labor Issues Final Rule to Protect Privacy of Workers*, Jan. 24, 2019, https://www.osha.gov/news/newsreleases/trade/01242019 ....................................................... 5

Press Release, OSHA, OSHA announces proposed new rule to improve tracking of workplace injuries and illnesses (Nov. 7, 2013), https://www.osha.gov/news/newsreleases/national/11072013 ................................................. 20

Press Release, OSHA, OSHA's final rule to 'nudge' employers to prevent workplace injuries, illnesses (May 11, 2016), https://www.osha.gov/news/newsreleases/national/05112016 ......... 5, 7

-vi -

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Will Evans & Allysa Jeong Perry, *Tesla Says Its Factory Is Safer But It Left Injuries Off the Books*, REVEAL, Apr. 16, 2018, https://www.revealnews.org/article/tesla-says-its-factory-is-safer-but-it-left-injuries-off-the-books/ ................................................................................................ 6

Worksafe, *Analysis of Tesla Injury Rates: 2014 to 2017*, at 2 (May 24, 2017), https://worksafe.typepad.com/files/worksafe_tesla5_24.pdf .................................................. 7

# NOTICE OF MOTION AND MOTION

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 12, 2019, at 1:00p.m., or as soon thereafter as the matter may be heard in Courtroom 4, located at United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Oakland, CA 94612, before the Honorable Donna M. Ryu, the Plaintiffs The Center for Investigative Reporting and Jennifer Gollan (together "Plaintiffs" or "CIR") will, and hereby do, oppose the motion filed by Defendant the United States Department of Labor ("Defendant" or "DOL"), Occupational Safety and Health Administration ("OSHA") and cross move the Court for an order granting for summary judgment in Plaintiffs' favor.

Pursuant to Federal Rule of Civil Procedure 56, CIR respectfully asks that this Court issue an order requiring the government to release all records, including any necessary redactions, improperly withheld from the public under the Freedom of Information Act ("FOIA") and which is explicitly allowed under the relevant statute defendant cites for exemption pursuant to 5 U.S.C. § 552(b)(4) ("Exemption 4").  This opposition and cross motion is based on this notice of cross motion and motion, the memorandum of points and authorities in support of this opposition and cross motion, the Declarations of D. Victoria Baranetsky ("Baranetsky Decl."), David Michaels ("Michaels Decl."), Margaret (Peg) Seminario ("Seminario Decl."), and attached exhibits, all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

- viii -
Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot.
Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

**RELIEF SOUGHT BY PLAINTIFFS**

Plaintiffs seek an order summarily dismissing Defendant's claims and granting summary judgment in Plaintiffs' favor.

**ISSUES TO BE DETERMINED**

Did Defendant improperly withhold government records under FOIA Exemption 4?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This is an action under the Freedom of Information Act, 5 U.S.C. § 552, seeking disclosure of OSHA's 300, 300A and 301 Reports ("Work Injury and Illness Reports" or "OSHA Reports"), which contain workplace injury and illness statistics that companies are required to submit to OSHA to ensure compliance with workplace safety standards.  For decades, OSHA has disclosed these records in response to FOIA requests from members of the public, including Plaintiffs.  Still, Defendant withholds OSHA Reports, claiming they contain confidential commercial business information, pursuant to 5 U.S.C. § 552(b)(4), and has moved for summary judgment.  DOL fails to meet its requisite burden to show that Exemption 4 applies; that a foreseeable harm would result; that proper search was performed; and that redaction requirements were met.

DOL cannot show that Exemption 4 applies for three reasons.  First, Work Injury and Illness Reports are not "commercial" according to 5 U.S.C. § 552(b)(4) because a tally of injuries and illnesses on company premises, Government Brief, Dkt. No. 26, at 4 ("Gov. Br."), cannot reasonably be described as commercial in nature or serving a commercial function.  To hold otherwise would create a perverse definition of "commercial".

Second, Work Injury and Illness Reports are not "confidential" even according to the Supreme Court's more lenient standard set out in *Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2365 (2019) ("*Argus Leader*"), which held that information is "confidential" "[a]t least where commercial or financial information is *both* customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Id.* at 2366 (emphasis added).  The records at issue here are not *customarily* treated as confidential because companies

submit OSHA Reports knowing the agency discloses them in accordance with established FOIA caselaw, and other agencies have a long tradition of releasing similar data in response to FOIA requests and even publishing this information. OSHA Reports are not *actually* confidential because (i) companies are required to post OSHA Reports in the workplace, (ii) companies disclose OSHA Reports to *all* employees upon request, and (iii) the Reports contain no secret or private information, as most employees know who gets sick and injured at work. Additionally, employers do not submit OSHA Reports under an assurance of privacy, but submit them in compliance "with a recordkeeping regulation promulgated in 2016[.]" Gov. Br. at 3.

Third, Exemption 4 is inapplicable because it cannot be used as a pretext to shield embarrassing information. DOL previously argued Exemption 7 applied, but then reversed course and now argues that Exemption 4 applies. This reversal and unreasonable application of Exemption 4 suggests the objection to the release may be to protect companies from possible embarrassment or incrimination, which does not justify withholding.

DOL has also failed to show that disclosing Work Injury and Illness Reports meets the "foreseeable harm" requirement, 5 U.S.C. § 552(a)(8)(A), established by Congress in the 2016 OPEN FOIA Amendment, which requires agencies show disclosure would result in "foreseeable harm" to an interest the relevant exemption seeks to protect. *Id.* Here, disclosure of OSHA Reports would not harm any proprietary interests, so this extra hurdle has not been met.

Lastly, OSHA has not shown that its search was sufficient or that proper redactions have been applied, where records were withheld in full and no explanation of procedures was given.

Having failed to meet its burden and show withholding was justified, this Court should deny the government's motion for summary judgment and grant CIR's cross motion.

## II. STATEMENT OF FACTS

### A. DOL Requires Federal Contractors to Submit Work Injury and Illness Reports to Ensure Safety.

In 1970 Congress created OSHA, "a national public health agency dedicated to the basic proposition that no worker should have to choose between their life and their job." OSHA, *All About*

*OSHA*, https://www.osha.gov/Publications/all_about_OSHA.pdf (Baranetsky Decl. Ex. 1); *see also* 29 C.F.R. § 1904.0.  Because OSHA's primary purpose is to "protect[] workers from toxic chemicals and deadly safety hazards at work, ensur[e] that vulnerable workers in high-risk jobs have access to critical information...and provid[e] employers with vigorous compliance assistance," *All About OSHA* at 3, OSHA requires certain employers[1] to "record and report work-related fatalities, injuries, and illnesses." § 1904.0; *see also All About OSHA* at 17 (stating "[t]racking . . . workplace injuries and illnesses play[s] an important role" in accomplishing agency goals.).

The forms at issue in this case are Form 300, Form 300A, and Form 301.  *All About OSHA* at 17.  OSHA Form 300 is a "log of work-related injuries and illnesses," and Form 301 is a more granular report that "provides additional details about each case recorded on the OSHA Form 300." Improve Tracking of Workplace Injuries and Illnesses, 81 Fed. Reg. 29624 (May 12, 2016) (to be codified at 29 C.F.R. §§ 1902, 1904).  OSHA Form 300A is an annual "summary report of all injuries and illnesses," *id.*, and contains data "total[ing] numbers of deaths, lost-workday cases, cases resulting in work restriction or transfer . . . as well as the total number of lost or restricted workdays; the classification of cases (injury, skin disorder, respiratory, poisoning, hearing loss, or other illnesses); the number of employees; and the total hours worked."  Gov. Br. at 4 (citing Edens Decl. ¶ 13, Dk. No. 27).  None of the Work Injury and Illness Report forms contain commercial information, such as wage data.

OSHA requires that employers maintain injury and illness data and that companies submit Work Injury and Illness Reports to the agency on an annual basis.  Under a rule promulgated in 2016, employers were required to electronically transmit Forms 300, 301, and 300A to OSHA annually.

---

[1] Specifically, the Regulation requires annual electronic submission of work injury reports from establishments with 250 or more employees; establishments with 20 or more employees but fewer than 250 employees in designated industries; and upon notification by OSHA.  29 C.F.R. § 1904.41(a).

*See* 81 Fed. Reg. 29,625 ("2016 Final Rule").   The agency issued a second final rule delaying compliance with the 2016 Final Rule, Improve Tracking of Workplace Injuries and Illnesses: Delay of Compliance Date, 82 Fed. Reg. 55,761 (Nov. 24, 2017) (to be codified at 19 C.F.R. § 1904), before issuing the final rule currently in effect in early 2019.   *See* Tracking of Workplace Injuries and Illnesses, 84 Fed. Reg. 380 (Jan. 25, 2019) (to be codified at 19 C.F.R. § 1904) ("2019 Final Rule");[2] *see also* Seminario Decl. ¶¶ 31-32 (describing rulemaking timeline).

Employers must also make Work Injury and Illness Reports accessible to employees by posting the 300A Forms "in a conspicuous place or places where notices to employees are customarily posted" and ensuring they are not covered by any other material. 29 C.F.R. § 1904; *see also* Gov. Br. at 4. The 300A forms must be posted for at least three months. § 1904. The employer must also disclose the reports to current and former employees upon request, *id.*, and must do so within 24-hours of receiving such a request. 29 C.F.R. § 1904.35.

OSHA's compulsory rules involving tracking, publishing, and sharing of Work Injury and Illness Reports were intended to prevent circumvention of the law and save lives. OSHA states that "Publication of worker injury and illness data will encourage employers to prevent injuries and illnesses among their employees through several mechanisms." 2016 Final Rule at 29,631; *see also id.* at 29,630-31 (listing seven different ways through which the public disclosure will lead to fewer workplace injuries); Seminario Decl. ¶ 27 ("[R]eleasing injury and illness data . . . will assist employers and workers in their prevention efforts").

---

[2] The 2019 Final Rule "rescinded the requirement for establishments with 250 or more employees to electronically submit information from OSHA Forms 300 and 301," 2019 Final Rule at 380, while leaving the 300A requirement from the 2016 Final Rule intact. *Id.* at 387.

**B.**     **Work Injury and Illness Reports Are Not Confidential.**

**1.**     **OSHA Makes Work Injury and Illness Reports Available to the Public.**

The 2016 Final Rule requires certain industries[3] to electronically submit their 2016 summary Form 300As to the agency because "OSHA intends to post the establishment-specific injury and illness data it collects under this final rule on its public Web site at www.osha.gov." 2016 Final Rule at 29,625.[4]  The Rule stated that OSHA would make "[a]ll collected data fields" from 300A Forms available on the OSHA website in "a searchable online database." 2016 Final Rule at 29,625.

The 2016 Final Rule was aimed at disclosure to allow Work Injury and Illness Reports to be publicly available.  Michaels Decl. ¶ 4.  OSHA stated this Rule would provide workers, researchers, the public and workplace safety regulators with "critical information" about "dangerous workplaces."  Press Release, OSHA, OSHA's final rule to 'nudge' employers to prevent workplace injuries, illnesses (May 11, 2016), https://www.osha.gov/news/newsreleases/national/05112016 (Baranetsky Decl. Ex. 4).  OSHA stated, "Just as public disclosure of their kitchens' sanitary conditions encourages restaurant owners to improve food safety, OSHA expects that public disclosure of work injury data will encourage employers to increase their efforts to prevent work-related injuries and illnesses." *Id.*

---

[3] Companies with 250 or more employees were required to electronically submit information from their 2018 300A forms to OSHA by March 2, 2019. *See* 2019 Final Rule at 397.

[4] The first set of data OSHA collected under the 2016 Final Rule was Calendar Year ("CY") 2016 Form 300A data, followed by CY 2017 and CY 2018 data.  OSHA will begin collecting CY 2019 Form 300A data in January 2020.  Gov. Br. at 4; *see also* OSHA Injury Tracking Application ("ITA"), https://www.osha.gov/injuryreporting (Baranetsky Decl. Ex. 2); Press Release, OSHA, U.S. Department of Labor Issues Final Rule to Protect Privacy of Workers (Jan. 24, 2019), https://www.osha.gov/news/newsreleases/trade/01242019 (Baranetsky Decl. Ex. 3).

2.    **OSHA Previously Released Identical Records to CIR and Other FOIA Requesters.**

OSHA has previously disclosed Work Injury and Illness Reports to members of the public, including Plaintiffs. Just last year, OSHA released a Form 300 to CIR in response to a FOIA request. Will Evans & Allysa Jeong Perry, *Tesla Says Its Factory Is Safer. But It Left Injuries Off the Books*, REVEAL, Apr. 16, 2018, https://www.revealnews.org/article/tesla-says-its-factory-is-safer-but-it-left-injuries-off-the-books/ (Baranetsky Decl. Ex. 5). One year prior, CIR obtained eight years of Goodyear Tire and Rubber Co.'s OSHA Reports from the agency. Jennifer Gollan, *Treading Dangerously: Lax Safety Inside Goodyear's Tire Plants,* REVEAL, Dec. 14, 2017, https://www.revealnews.org/article/treading-dangerously-lax-safety-inside-goodyears-tire-plants/ (Baranetsky Decl. Ex. 6).

Work Injury and Illness Reports are routinely released in response to other FOIA requestors for public distribution. For example, *Bloomberg Environment* obtained Amazon's 2018 Form 300A from a FOIA request. OSHA, FOIA Report – Q4 2018 (2018), https://www.osha.gov/sites/default/files/incomingrequests_06012018_12312018.xlsx (Baranetsky Decl. Ex. 7). OSHA released Microsoft, Amazon, Pepsico, Nestle, and Intel's Forms 300, 300A, 301 in response to a May 2017 request made by Perkins Coie LLP. OSHA, FOIA Report – CY 2017 (2017), https://www.osha.gov/sites/default/files/CY2017_FOIA_Log.xlsx (Baranetsky Decl. Ex. 8). Muckrock, a nonprofit organization, obtained Barlett Grain Elevator's Form 300A in 2013. *Bartlett Grain Elevator Inspection Reports*, MUCKROCK, https://www.muckrock.com/foi/united-states-of-america-10/bartlett-grain-elevator-inspection-reports-2917/#file-8571 (Baranetsky Decl. Ex. 9). More recently, PBS Frontline in 2019 obtained a copy of Amazon's Golden State 300A form through a public records request to Cal/OSHA. Email from Frank Polizzi, California Dep't of Industrial Relations, to Sara Beladi, Legal Intern, CIR (Sep. 30, 2019, 11:00 AM PST) (Baranetsky Decl. Ex. 10).

### 3. Employees Have Routinely Published Work Injury and Illness Reports Disclosed by Companies.

Former and current employees who are entitled to full, unredacted copies of Work Injury and Illness Reports, 29 C.F.R. § 1904.35, have previously shared the OSHA Reports with members of the news media for public distribution. For example, in 2017, Tesla employees requested copies of Form 300 from the company, and subsequently shared them with WorkSafe, a California-based nonprofit, which analyzed and published the data. Worksafe, *Analysis of Tesla Injury Rates: 2014 to 2017*, at 2 (May 24, 2017), https://worksafe.typepad.com/files/worksafe_tesla5_24.pdf (Baranetsky Decl. Ex. 11). Agency rules and regulations allow neither the companies nor OSHA to prevent employees from disclosing these reports once they are in employees' possession. 2016 Final Rule at 29,624.

### C. The Public Has a Strong Interest in Work Injury and Illness Reports.

Publication of Work Injury and Illness Reports has beneficial results for companies by creating trust with the public and ensuring a healthy and safe workforce. OSHA concedes that the public has a strong interest in the publication of OSHA Reports, having stated that "public disclosure of work injury data will encourage employers to increase their efforts to prevent work-related injuries and illnesses." Press Release, OSHA, OSHA's final rule to 'nudge' employers to prevent workplace injuries, illnesses (May 11, 2016), https://www.osha.gov/news/newsreleases/national/05112016 (Baranetsky Decl. Ex. 4).

Disclosure of Work Injury and Illness Reports has been crucial to an ongoing public discussion about workplace safety. Various news outlets, including CIR, have used these reports as the foundation for numerous news articles that have informed the public about workplace injuries and deaths in countless industries, including shipyards, automotive, oil and gas, and technology. *See, e.g.*, Jennifer Gollan, *The Deadly Danger of Trump's Naval Buildup Plan*, REVEAL, Feb. 10, 2017, https://www.revealnews.org/article/deadly-danger-naval-buildup/ (Baranetsky Decl. Ex. 12);

-7-

Jennifer Gollan, *He said Goodyear rule kept machines on during repair. He died fixing one.*, REVEAL, Dec. 20, 2017, https://www.revealnews.org/article/he-said-goodyear-rule-kept-machines-on-during-repair-he-died-fixing-one/ (Baranetsky Decl. Ex. 13); Caroline O'Donovan, *In Blue Apron's Chaotic Warehouses, Making Dinner Easy Is Hard Work*, BUZZFEED, Oct. 2, 2016, https://www.buzzfeed.com/carolineodonovan/the-not-so-wholesome-reality-behind-the-making-of-your-meal?utm_term=.wmboxDdlO#.ynKmlOvXD (Baranetsky Decl. Ex. 14); Don Behm, *Machine failure blamed for injuring 8 workers at Saukville foundry*, MILWAUKEE-WISCONSIN J. SENTINEL, May 20, 2014, http://archive.jsonline.com/news/ozwash/machine-failure-blamed-for-injuring-7-workers-at-saukville-foundry-b99274108z1-259929331.html/ (Baranetsky Decl. Ex. 15).

Public advocates and members of government have called for expanded access to Work Injury and Illness Reports for decades. The disclosure of OSHA Reports has been championed by consumer watchdog groups and workplace safety experts. *See, e.g.*, Bruce Rolfsen, *Employers' OSHA Injury Records Sought by Workers' Rights Group*, BLOOMBERG ENV'T, Jan. 23, 2018, https://news.bloombergenvironment.com/safety/employers-osha-injury-records-sought-by-workers-rights-group (Baranetsky Decl. Ex. 16); *Public Citizens Sues DOL, OSHA over injury records*, SAFETY & HEALTH, Jan. 24, 2018, http://www.safetyandhealthmagazine.com/articles/16621-public-citizen-sues-dol-osha-over-injury-records (Baranetsky Decl. Ex. 17); *see also Public Citizen Found. v. Dep't of Labor*, No. 18-117 (D.D.C. filed Jan. 19, 2018).

D.   **CIR's FOIA Request and Administrative Appeal**

On January 31, 2018, Plaintiffs submitted a FOIA request to OSHA seeking records pertaining to OSHA's Forms. Dkt. 1-1. More specifically, CIR requested that OSHA "provide all data submitted since August 1, 2017 through OSHA's 'Injury Tracking Application' pursuant to the Final Rule 'Improve Tracking of Workplace Injuries and Illnesses.'" *Id.* It added, "Please include

electronically submitted information from OSHA Forms 300, 300A, and 301." *Id.*

Plaintiffs sought a waiver of search and review fees on the grounds that the CIR qualifies as a "representative of the news media" and that the records were not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii) and (iii). Plaintiffs sought expedited processing on the grounds that there is a "compelling need" for these records because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity. 5 U.S.C. § 522(a)(6)(E); 29 C.F.R. § 70.25(c)(3). Plaintiff Ms. Gollan certified that all statements were true to the best of her knowledge.

On February 22, 2018, CIR received a letter denying its request ("the Denial"). Dkt. 1-2. The Denial stated, "OSHA does not have any records pertaining to OSHA Forms 300 or 301." *Id.* It continued, "OSHA has identified approximately 237,000 records that meet the criteria of your request. We are denying your request under Exemption 7(E) of FOIA." *Id.* The Denial explained that disclosing the records "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . [which] reasonably be expected to risk circumvention of the law, 5 U.S.C. § 552(b)(7)(E)." *Id.* It explained that 300A information was exempt because "OSHA plans to use the establishment-specific data for enforcement targeting purposes" and therefore release would disclose "OSHA's techniques and procedures for law enforcement." *Id.*

On March 1, 2018, CIR sent an administrative appeal letter to DOL, appealing the Denial and requesting an expedited response and processing of the Request ("The Appeal"). Dkt. 1-3. The Appeal argued that Exemption 7(E) is inapplicable to the requested all OSHA Forms because the records were not compiled for law enforcement purposes, the release would not disclose law enforcement techniques and procedures, and disclosure could not logically be expected to risk circumvention of the law. Plaintiffs received a letter dated March 16, 2018 acknowledging the appeal and notifying Plaintiffs that "the number of appeals currently awaiting review and decision is very

-9-

substantial." Dkt 1-4.  DOL failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(ii), requiring that an agency make a determination with respect to an appeal within the 20 business days.

Having exhausted all administrative remedies, Plaintiffs filed a Complaint in this action on April 23, 2018.  Dkt. 1.  This filing followed a similar FOIA case filed by a different plaintiff on January 19, 2018, in the District Court for the District of Columbia, *Public Citizen Foundation v. DOL, et al.*, No. 18-cv-000117 (D.D.C.), which also discussed the records being withheld under Exemption 7.  Subsequently, DOL determined that the information was exempt under Exemption 4. 5 U.S.C. § 552(a)(4)(B).[5]  Plaintiffs did not think that OSHA Reports could properly be withheld under *any* Exemption 4 standard, but the parties agreed to postpone briefing to avoid duplicative briefing given the Supreme Court's pending decision in *Argus Leader* dealt with Exemption 4.  On March 4, 2019, this Court administratively closed this case pending the Supreme Court's decision. Dkt. No. 19.  On June 24, 2019, the Supreme Court decided *Argus Leader*.  The present motion is submitted pursuant to a stipulated briefing schedule, as modified.  *See* Dkt. Nos. 20, 22, 24.

## III.   ARGUMENT

### A.   The Freedom of Information Act and the Standard of Review

FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempt[] under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (internal citations and quotation marks omitted).  In a FOIA case, the agency invoking an exemption in order to withhold requested records "bears the burden of

---

[5] *See Public Citizen Foundation v. DOL, et al.*, No. 18-cv-117 (D.D.C.), Dkt. Nos. 14, 14-4. That case was briefed prior to the decision in *Argus Leader*.  Since that time, Plaintiff in that case has filed a letter explaining why Exemption 4 does not apply even after *Argus Leader*.  Plaintiffs here request that this Court take judicial notice of that case. The Ninth Circuit has held that "court filings and other matters of public record" are judicially noticeable.  *Reyn's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

demonstrating that the exemption properly applies to the documents," *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009). Exemptions are to be interpreted narrowly. *Id.* While the agency may meet its burden with declarations that "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption," *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (quotation omitted), "conclusory and generalized allegations . . . are unacceptable and cannot support an agency's decision to withhold requested documents." *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1291 (D.C. Cir. 1983) ("*Pub Citizen*"); *see also Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1195 (9th Cir. 2011).

**B.      CIR is Entitled to Summary Judgment Because the Government Has Improperly Withheld Work Injury and Illness Reports Under Exemption 4.**

Under FOIA Exemption 4, an agency may only withhold information if it proves disclosure would release (1) trade secrets or commercial or financial information that is (2) obtained from a person and (3) is privileged or confidential. 5 U.S.C. § 552(b)(4). The purpose of this exemption is to "balance the strong public interest in favor of disclosure against the right of private businesses to protect sensitive information." *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 768-69 (D.C. Cir. 1974). OSHA cannot meet its burden here.[6] Work Injury and Illness Reports are not commercial or financial information and they are not privileged or confidential[7]—even under the more lenient *Argus Leader* standard.

---

[6] CIR does not contest the second part of the test - that the records were obtained from a person.
[7] The government concedes that Work Injury Reports are not trade secrets because DOL does not address this point in its brief. *See generally* Gov. Br. To the extent the government does still assert this position, Work Injury and Illness Reports cannot qualify as trade secrets because courts have limited the definition of trade secrets under FOIA and these records cannot be described as revealing a valuable plan, formula, process or device; they merely describe injury and illness statistics of the company. *Pub. Citizen*, 704 F.2d at 1289 (stating records must be related to "the productive process itself"); *see also Citizens Comm'n on Human Rights v. Food & Drug Admin.,*

1. **Work Injury and Illness Reports are improperly withheld under Exemption 4 because they are not commercial.**

Work Injury and Illness Reports cannot be described as commercial or financial records. Courts "have consistently held that the terms 'commercial' and 'financial' in the exemption [4 context] should be given their ordinary meanings." *Pub. Citizen*, 704 F.2d at 1290; *accord Watkins*, 643 F.3d at 1194. In the context of FOIA Exemption 4, "financial" applies to information related to an organization's finances, such as "actual sales data," *Argus Leader*, 139 S. Ct. at 2361, whereas "commercial" only applies to information that is actually "of a commercial nature" or "serves a commercial function." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002), and not simply any information *related to* a business. *Cf.* Gov. Br. at 10. The government argues that this information is "commercial," and not "financial." *See id.*

Courts have held records are "of a commercial nature" only where they are related to the commercial activity of a business. For instance, in *Watkins*, the Ninth Circuit found information about the importation process of counterfeit goods was "commercial" because it was directly connected to the *commercial activity* of importing goods. *Watkins*, 643 F.3d at 1194. In contrast, records that describe the work force or extraneous facts about a company are not commercial in nature. *See, e.g., Pub. Citizen v. United States Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 103 (D.D.C. 2013) (information provided by pharmaceutical companies to the HHS, consisting of name, title, and responsibilities of any person determined to be ineligible person, is not commercial in nature). In such cases, while the records could be used to gain "insight into the nature of a company's business dealings," the courts find that does not "not convert the [records]

*Eli Lilly & Co.*, No. 92-CV-5313, 1993 WL 1610471 at *7 (C.D. Cal. May 10, 1993), *aff'd in part and remanded in part on other grounds*, 45 F.3d 1325 (9th Cir. 1995).

-12 -

into commercial information." *Nat'l Bus. Aviation Ass'n, Inc. v. FAA*, 686 F.Supp.2d 80, 86-7 (D.D.C. 2010).

Documents that "serve a commercial function" are even more limited, as courts find they relate only to records documenting the finances of a company.  Courts have held that information about revenue, service pricing, and checking accounts are commercial only where records serve a commercial function.  *See, e.g., Skybridge Spectrum Found. v. Fed. Commc'ns Comm'n*, No. 10-01496, 2012 WL 336160 at *12 (D.D.C. 2012); *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F.Supp.2d 1184, 1188 (D. Colo. 2001); *New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43, 47 (1st Cir. 2015).  Generally, information about personnel or employees does not serve a sufficiently commercial function to qualify as commercial.  *See, e.g., id.* (holding that an organization's personnel policies are not commercial in nature.).

Here, the government has failed to meet its burden to show how OSHA Reports are of a commercial nature or serve a commercial function.  *Cf. Watkins*, 64 F. 3d at 1194; *Skybridge*, 2012 WL 336160 at *12.  The government tries to meet its burden with a single conclusory sentence in its brief which states that: "The employee and establishment information gathered via Form 300A, including number of employees, hours worked, and work-related injuries, illnesses, and fatalities, is information in which the establishments have a commercial interest, information that deals with commerce, and information that is related to business or trade."  Gov. Br. at 13.  DOL provides no citations to any declarations for this proposition, let alone any detailed statements explaining how OSHA Reports meet FOIA Exemption 4's definition of "commercial."  Indeed, the declarations are mute as to how OSHA Reports are of a commercial nature and reveal the companies' financial information like payment data or serve *any* commercial function.  *See generally* Declaration of Patrick Kapust, Dkt. No. 28 ("Kapust Decl.").  Instead, it appears these records merely exist to serve a government and public function—to ensure worker safety.  *See supra* Section II.A.  And to

the extent that OSHA Reports even offer "insight into the nature of a company's business

dealings," that is not enough. *Nat'l Bus. Aviation Ass'n*, 686 F.Supp.2d at 86-7.  Without more,

DOL cannot overcome the fact that records describing illnesses and injuries which is decidedly

insufficient to qualify as "commercial." *New Hampshire Right to Life.*, 778 F.3d at 49.[8]

> **2.     Work Injury and Illness Reports are improperly withheld under Exemption 4 because they are not confidential.**

In *Argus Leader*, the Supreme Court held that information is "confidential" under

Exemption 4 "where commercial or financial information is both customarily and actually treated

as private by its owner and provided to the government under an assurance of privacy." 139 S. Ct.

at 2366.  Despite the modified standard, it is a basic rule that "If an individual discloses [his or her

information] to others who are under no obligation to protect the confidentiality of the information,

or otherwise publicly discloses the secret, [his or her] property right is extinguished." *Ruckelshaus

v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

Here, the government has not met its burden to show that Work Injury and Illness Reports

are confidential.  OSHA announced in its 2016 Final Rule that the agency "intend[ed] to post the

establishment-specific injury and illness data it collects . . . on its public Web site." 2016 Final

Rule at 29,625.  The agency stated it intended to publicize OSHA Report data as early as 2013,

Improve Tracking of Workplace Injuries and Illnesses, 78 Fed. Reg. 67,254 (Nov. 8, 2013) (to be

codified at 29 C.F.R. §§ 1904, 1952), and announced it was exploring the possibility of publicizing

---

[8] Lastly, employing DOL's expansive definition of "commercial" would undermine FOIA.  DOL argues that the definition of "commercial" is generally held to be "broad[]" but to employ this definition and render OSHA Reports as "commercial" risks bloating the term in a way that would swallow much of FOIA.  *See generally* Brief for AI Now Inst. et. al. as Amici Curiae Supporting Respondents, Food Marketing Inst. v. Argus Leader Media, 139 S. Ct. 2356 (2019) (No. 18-481), 2 ("Because the government so often relies on private vendors or contractors to carry out core governmental functions, it is impossible to adopt an expansive interpretation of Exemption 4 without doing violence to FOIA's core purpose.") (Baranetsky Decl., Ex. 18).

-14-

this data as early as 2010.  Modernization of OSHA's Injury and Illness Data Collection Process, 75 Fed. Reg. 24,505 (May 5, 2010) (to be codified at 29 C.F.R. § 1904).  *See also* Seminario Decl. ¶¶ 23-24.  Thus, from the Rule's inception, it was intended to facilitate and require the public posting of Work Injury and Illness data—this was the very purpose of the regulation.  *See* Michaels Decl. ¶¶ 4-5.  Moreover, companies make this information routinely available to current and former employees.  While these facts alone should be enough to defeat any assertion that Work Injury and Illness Reports are confidential, they are also not confidential under *Argus Leader*'s two-part inquiry described above, and cannot be withheld under Exemption 4.

>            (a)     **Work Injury and Illness Reports are not confidential
>                    because they are not customarily treated as private.**

Merriam-Webster defines custom as "a usage or practice common to many or to a particular place or class or habitual with an individual." *Custom*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/custom?src=search-dict-hed (Baranetsky Decl. Ex. 19).  Work Injury and Illness Reports are not customarily treated as confidential by the companies at issue because companies share this information with former and current employees (no matter their strata at the company) as well as their representatives upon request, as such DOL's argument that such data are customarily kept confidential must fail.  *See, e.g.*, *State of N.D. ex rel. Olson v. Andrus*, 581 F.2d 177, 180-82 (8th Cir. 1978) (surrendering government documents regarding water projects to a private party, the government waived its right to assert that such documents were exempt from disclosure under FOIA); *Julian v. Dep't of Justice*, 806 F.2d 1411, 1419 n.7 (9th Cir. 1986); (disclosing presentence reports to prisoners, constituted a waiver under FOIA, regardless of whether the prisoners had an opportunity to copy the reports); *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir. 1997) ("FOIA does not permit selective disclosure of information only to certain parties.")

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OSHA has made this and similar data available to the public for decades, and thus publicizing similar data is a "common" and "habitual" agency practice. Michaels Decl. ¶ 7. Companies submit this information to OSHA with the full knowledge that it may be publicized or disclosed. 2019 Final Rule at 386. While reporting requirements under the Final Rule have only been in place for several years, "OSHA has published specific injury and illness data from the OSHA Data Initiative [("ODI")] on its public website since 2009," and "[t]hese data have been easily available and accessed by the public." Michaels Decl. ¶ 7. Under the ODI, OSHA Reports were "released under FOIA requests," and the agency took the position in 2013 that "all data fields [from Form 300A] could be made available" since these forms contain only summaries of workplace injuries, and no identifying or more granular data. 78 Fed. Reg. 67,259. *See also* Seminario Decl. ¶ 18 (describing obtaining work injury data in response to FOIA requests). Although the proposed rule was meant to "replace[] the ODI," 78 Fed. Reg. 67,257, the agency now withholds the same data it previously disclosed under FOIA when the ODI was in place.

Other agencies within the DOL have also long posted data similar to those contained in OSHA Reports on their public websites. The Mine Safety and Health Administration ("MSHA") has, for example "been collecting similar data . . . for many years and has posted data on the web for more than fifteen years." 2019 Final Rule at 387 (citation omitted). The Federal Railroad Administration and the Federal Aviation Administration similarly post "accident investigation reports" and "reports about aviation accidents" respectively. *Id.*; *see also* Michaels Decl. ¶ 9. These longstanding practices are strong evidence that data about workplace injuries submitted to DOL agencies is not *customarily* treated as secret.

OSHA itself has released Work Injury and Illness Reports in response to FOIA requests numerous times in the past, including to CIR in 2017 and 2018, *see supra* Section II.B.2, undermining its current position that these Reports are exempt. OSHA conceded in the 2019 Final

-16-

Rule that courts have twice disagreed with OSHA's current position that OSHA Reports are exempt under Exemption 4 and ordered disclosure, starting in 2004. 2019 Final Rule at 386 (citing *New York Times Co. v. U.S. Dep't of Labor*, 340 F. Supp 2d 394 (S.D.N.Y. 2004); *Finkel v. U.S. Dep't of Labor*, No. 05-55255, 2007 WL 1963163 (D.N.J. June 29, 2007)). The fifteen-year practice of disclosing this data in response to FOIA requests and court orders has contributed to this custom, and OSHA's argument that current believes OSHA Reports are exempt from disclosure under Exemption 4, *see* Gov. Br. at 25, is insufficient to overcome this longstanding practice of disclosure.

### (b)  Work Injury and Illness Reports are not confidential because they are not actually private.

Work Injury and Illness Reports are not actually secret within the companies at issue. The government emphasizes that it has taken the position—in ongoing litigation, in response to recent FOIA requests, and on its website—that the Reports are exempt under FOIA, Gov. Br. at 25, but the *companies*' treatment of the data, the operative inquiry under *Argus Leader*, shows otherwise. 139 S. Ct. 2356, 2366 (2019) (exempt information under Exemption 4 must be "actually be treated as private by its owner"). In addition to submitting data to OSHA with the knowledge that they may be disclosed by the agency, covered companies are themselves required to make Work Injury and Illness Reports available internally by two separate methods, 29 C.F.R. § 1904, which together defeat any argument that the Reports are actually treated as confidential.

Companies have been recordkeeping and sharing workplace injuries and illnesses with OSHA since 1971. Today, reports must be posted annually, 29 C.F.R. § 1904.32(a)(1), "in a conspicuous place," may not be "altered, defaced, or covered," (a)(5), and must remain posted for three months. (a)(6). The government states that since this workplace posting disclosure is "limited in both time and reach," Gov. Br. at 21, the posting requirement does not "render the data

publicly available." *Id.* (quoting *OSHA Data/CIH v. U.S. Dep't of Labor*, 220 F.3d 153, 163 n. 25 (3rd Cir. 2000)).[9]   However, that is not the only way that companies make these records available.

Companies are *also* required to provide copies of OSHA Reports to "employees, former employees" and their representatives, and must do so "by the next business day" following the request. 29 C.F.R. § 1904.35(b)(2). While the government perfunctorily states that "any disclosure is to, at most, a small subset of all employees," Gov. Br. at 21, any disclosure whatsoever is fatal to the company. *See Argus Leader*, 139 S. Ct. at 2363. Since "it is hard to see how information could be deemed confidential if its owner shares it freely" *id.*, the unlimited sharing of OSHA Reports with past and current employees undoes any claim that these records are confidential. Moreover, the regulations contain no provision limiting the number of employees or former employees who may request Work Injury and Illness Reports, so the so-called "small subset" could in fact be a company's entire workforce. *Cf. Id.* (stating that "the Institute's retailers customarily do not disclose store-level SNAP data or make it publicly available 'in any way'" and "[e]ven within a company . . . only small groups of employees usually have access to it"). Also, the disclosure provision to employees does not have *any* limitations on the employee's sharing—so an employee may request OSHA Reports at any time and disclose them to any other party, indefinitely.

In addition to sharing this information with employees who request the forms, workers often already know who is ill and injured in a company—serious injuries within a workplace are often visible to employees and quickly reported on as matters of public concern. *See, e.g.,* Christopher Kuhagen & Erik Hanley, *Police ID worker who died in a fall at the Oak Creek*

---

[9] The Second Circuit reached the same conclusion in *New York Times v. U.S. Dep't of Labor*, where a requirement that companies post work injury data for one month did not render the information publicly available, 340 F. Supp. 2d 394, 401 (S.D.N.Y. 2004), however neither Circuit addressed whether the other ways these companies made OSHA Reports public would spoil confidentiality, *i.e.* that OSHA Reports are directly shared with employees.

*Amazon facility construction site*, MILWAUKEE JOURNAL-SENTINEL, July 10, 2019, https://www.jsonline.com/story/communities/south/news/oak-creek/2019/07/10/worker-oak-creek-amazon-construction-site-dies-fall/1695478001/ (Baranetsky Decl. Ex. 20). Additionally, OSHA regulations require employers to inform "employees [that they] have the right to report work-related injuries and illnesses," and "establish a reasonable procedure for employees to report work[-]related injuries and illnesses," involving employees in the reporting of workplace accidents by design. 29 C.F.R. §§ 1904.35(b)(1)(i)-(iii).

Still, the government argues these companies actually treat OSHA Reports as confidential because some comments received during rulemaking process stated as much. *See* Gov. Br. at 15. The government relies on comments critical of publicizing Work Injury and Illness Report data made in 2014 during the rule-making process, *see generally* Kapust Decl., Ex. E, Dkt. No. 28-5, but offers no evidence that these concerns apply five years later. OSHA itself decided to override the concerns about publicizing the data it now emphasizes when it promulgated the 2016 Final Rule. Moreover, "*many* commenters" ascribed "benefits . . . to publication of the data" including research benefits during rulemaking. 2019 Final Rule at 391 (emphasis added). Numerous trade groups and professional associations, including the AFL-CIO, New York State Nurses Association, and Service Employees International Union, made comments in support of publishing Work Injury and Illness Report data. 2016 Final Rule at 29,648. *See also* Seminario Decl. ¶¶ 26-28 (describing research benefits and strengthened injury prevention efforts). This casts doubt on the government's assertion that it is the "prevailing view that the submitters consider the subject data confidential." Gov. Br. at 21.

1

2

          **(c)**    **OSHA gives no assurance of confidentiality because Work Injury and Illness Reports were intended to be public.**

3

4

      In *Argus Leader*, the Court suggested that information submitted to the government may

5

"*lose* its confidential character for purposes of Exemption 4 if it's communicated to the

6

government without assurances that the government will keep it private." 139 S. Ct. at 2363

7

(emphasis in original). Not only did OSHA give no assurance of privacy at the outset of the rule-

8

making process, but it informed companies and the public that OSHA Report data would be public

9

as early as 2013. *See* Press Release, OSHA, OSHA announces proposed new rule to improve

10

tracking of workplace injuries and illnesses (Nov. 7, 2013),

11

https://www.osha.gov/news/newsreleases/national/11072013 (announcing proposed rule and

12

stating "OSHA plans to eventually post the data online") (Baranetsky Decl. Ex. 21).

13

      DOL tries but fails to skirt OSHA's announcements at both the commencement and

14

conclusion of the rule-making process that the agency intended to publish Work Injury and Illness

15

Reports. Gov. Br. at 21. The government attempts to focus on its ongoing litigation and denial of

16

similar FOIA requests as evidence that it provides assurances of confidentiality, Gov. Br. at 25, but

17

it has at the same time made this data available to FOIA requestors, *see supra* Section II.B.2, and

18

acknowledges that "two separate courts" have disagreed with this position and "ordered OSHA to

19

release injury and illness data that OSHA argued were exempt . . . under Exemption 4." 2019 Final

20

Rule at 386 (citing *New York Times Co. v. U.S. Dep't of Labor*, 340 F. Supp 2d 394 (S.D.N.Y.

21

2004); *Finkel v. U.S. Dep't of Labor*, No. 05-55255, 2007 WL 1963163 (D.N.J. June 29, 2007)).

22

Unlike circumstances where companies file information with the government under an assurance of

23

privacy in order to obtain something in return, here, the Work Injury and Illness Reports are

24

required. Where there is no assurance of confidentiality and the government has actually released

25

records in the past, it cannot later withhold them under Exemption 4.

26

27

28

1

             **(d)**     **Work Injury and Illness Reports are identified as**
                         **confidential as a pretense, impermissible under**

2

                         **Exemption 4.**

3

4

        Exemption 4 does not guard against mere embarrassment in the marketplace or reputational

5

injury." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 564 (D.C. Cir. 2010); *Gen. Elec.*

6

*Co. v. U.S. Nuclear Regulatory Comm'n*, 750 F.2d 1394, 1402-03 (7th Cir. 1984) ("[T]he

7

competitive harm that attends any embarrassing disclosure is not the sort of thing that triggers

8

exemption 4."); *Martech USA, Inc. v. Reich*, No. C-93-4137 EFL, 1993 WL 1483700, at *2 (N.D.

9

Cal. Nov. 24, 1993) (although "information could damage plaintiff's reputation, this is not the type

10

of competitive harm protected by the confidential commercial information exemption"). Here, the

11

government initially cited Exemption 7(E) as justification for withholding the OSHA Reports, Dkt.

12

1-2, and then abandoned that rationale and asserted Exemption 4. This change in rationale after the

13

filing of this case, and its illogical reasoning for withholding Work Injury and Illness Reports

14

which are made public, together suggest that its Exemption 4 rationale may be pretextual.

15

        OSHA abandoned its Exemption 7 argument and now provides no logical reasons for the

16

withholding of Work Injury and Illness Reports under Exemption 4. The agency cites privacy

17

concerns as a major reason for withholding the reports, *see* Gov. Br. at 15 ("[Commenters]

18

remarked . . . that they have significant privacy concerns"), but Forms 300, 300A, and 301 contain

19

no confidential information, and to the extent that the forms contain any private information, they

20

can be redacted. Michaels Decl. ¶ 8 ("because the data is collected electronically, certain fields can

21

easily be redacted . . . making the data at issue segregable under FOIA"). A district court recently

22

found that similar reported data were "unquestionably segregable," and any privacy concerns could

23

be cured by OSHA "withhold[ing] those fields and still releasing other fields containing de-

24

identified information regarding . . . workplace incidents." *Pub. Citizen Health Research Grp. v.*

25

*Acosta*, 363 F. Supp. 3d 1, 16 (D.D.C. 2018).

26

27

28

-21 -

OSHA also contradicts its position that disclosing even Form 300A data poses privacy concerns. Gov. Br. at 15. The agency has ceased collection of 300 and 301 forms because it believes "collecting Form 300A provides concrete enforcement benefits *without* putting private worker information at risk of disclosure." 2019 Final Rule at 384 (emphasis added). OSHA previously determined that "all fields [in the 300A form] could be made available," 78 Fed. Reg. 67259, further undermining privacy concerns asserted here. Additionally, MSHA has not received "complaints . . . about employee privacy," 2019 Final Rule at 387, despite collecting and publishing similar information, further suggesting these concerns are ill-founded or pretextual.

The government states that commenters asserted during rulemaking that disclosing Work Injury and Illness Reports would cause "unfair and irreparable harm to employers' reputations" due to the public's "misinterpretations" and "faulty conclusions" about the data. Gov. Br. at 19. But the government offers no evidence of this, noting only that "some commenters cited specific instances of the limitations in the data and the risk of misinterpretation." *Id.* Concrete, specific evidence of such harms is required when an agency seeks to withhold information under Exemption 4. *National Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673, 679 (D.C. Cir. 1976). Because Exemption 4 does not apply where injury "might flow from . . . embarrassing publicity," *Pub. Citizen*, 704 F.2d at 1291, withholding is unjustified here.

## C.    CIR is Entitled to Summary Judgment Because the Government Has Failed to Meet the Foreseeable Harm Standard

In 2016, the OPEN FOIA Amendment added an additional and independent hurdle that heightens the requirements for withholding under FOIA, called the "foreseeable harm" test.[10]

---

[10] The government ignores this requirement, but the foreseeable harm standard, "codif[ies] a presumption of openness for agencies to follow when they respond to FOIA requests." 114 Cong. Rec. S1495 (Mar. 15, 2016), https://www.congress.gov/114/crec/2016/03/15/CREC-2016-03-15-senate.pdf (statement of Sen. Grassley) (Baranetsky Decl. Ex. 22).

Under this test, an agency may withhold information only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption . . . or disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A). The agency bears "the burden of justifying any withholding" under the foreseeable harm standard, *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019), a burden which the OSHA cannot meet. Even if Exemption 4 applies in this case, its protected interests will not be harmed by the disclosure.

      1.    **Even if Exemption 4 applies in this case, the government has not shown that Exemption 4's protected interests will be harmed by the disclosure.**

The foreseeable harm standard requires a showing that a specific harm the particular exemption seeks to prevent will result from the disclosure. *Machado Amadis v. Dep't of Justice*, 388 F. Supp. 3d 1, 20 (D.D.C. 2019). Because Exemption 4 seeks to protects "trade secrets and commercial or financial information" that is "privileged or confidential," 5 U.S.C. § 552(b)(4), as well as "assurances about the treatment of . . . proprietary" information, *Argus Leader*, 139 S. Ct. at 2366, the foreseeable harm standard requires OSHA to show a foreseeable harm to proprietary confidential information will occur by disclosing Work Injury and Illness Reports.

Here, no Exemption 4 interests would be harmed by disclosure. First, there are no proprietary interests in the requested records. Work Injury and Illness Reports cannot be characterized as containing "proprietary information," nor are they commercial or financial in nature. *See supra* Section III.A. Unlike "sales statistics" or "profits and losses," *Pub. Citizen*, 704 F.2d at 1290, the OSHA Reports do not reveal anything about the financial and commercial affairs of the company. Second, OSHA has failed to allege any harm in a concrete manner, alleging only vague potential harms: that public awareness of injuries could pose "privacy concerns" or lead to other "harm" to businesses. Gov. Br. at 19-21. Most importantly, reputational and privacy interests are not the commercial and proprietary interests Exemption 4 seeks to protect.

1

2       2.     **Even if protected interests could be harmed by disclosure, such a harm is not "reasonably foreseeable."**

3       The statutory phrase "reasonably foreseeable" in the amendment indicates that the harm

4 resulting from disclosure must be foreseeable from an *objective* standpoint. *Kentucky v. King*, 563

5 U.S. 452, 464 (2011) ("Legal tests based on reasonableness are generally objective[.]"). Therefore,

6 to withhold the OSHA reports, the agency must show that resultant harm is objectively foreseeable.

7 Even if OSHA had alleged the privacy and reputational harms in a more concrete manner, and even

8 if they were the type of harms Exemption 4 sought to guard against, such harms are not objectively

9 foreseeable. It is not clear how work injury and illness data would provide insight on these

10 matters, and thus the government cannot meet its burden under the standard.

11

12       **D.**      **OSHA Has Failed to Demonstrate it Performed an Adequate Search.**

13       An agency is required to perform a reasonably adequate search for records, and the burden

14 is on the agency to establish adequacy. *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp.

15 2d 1086, 1089 (C.D. Cal. 2005); *Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1198 (N.D. Cal. 2006).

16 "[T]he process and specifics" must be explained. *McCash v. CIA*, No. 5:15-CV-02308-EJD, 2016

17 WL 6650389, at *5 (N.D. Cal. Nov. 10, 2016).

18

19       OSHA claims its search for 300A forms was reasonable but it is unclear what search was

20 done, and whether it was sufficient. Gov. Br. at 11. Such "detailed, nonconclusory statements",

21 *Nat'l Res. Def. Council*, F. Supp. 2d at 1089, fail to meet the requisite burden. OSHA states "it

22 does not have any records pertaining to OSHA Forms 300 or 301" because it is "not collecting that

23 information at this time." Gov. Br. at 11, n.5.[11] This conclusory statement is also insufficient.

24

25

26 [11] The Government states "Plaintiffs have not disputed" that the records stopped collecting the information and suggest that Plaintiffs have waived this argument. However, the administrative

27 appeal letter repeatedly discussed that withholding of *all* OSHA Forms, including 300, 300A and 301. Regardless, the standard to prove waiver is not met here. *Yonemoto v. Dep't of Veterans*

28 *Affairs*, 686 F.3d 681, 692 (9th Cir. 2012).

-24-

The government provides no information about whether OSHA has any of these documents, regardless of whether the records are "collected at this time." It could be wholly possible a company submitted records, despite the collection requirements, and that records are in the agency's possession but no search was done. DOL remains silent as to this matter.

     **E.**    **If Responsive Records Contain Exempt and Non-Exempt Portions, The Latter Must Be Disclosed with Redactions**

An agency also bears the burden of "establish[ing] that all reasonably segregable portions of a document have been segregated and disclosed," and must do so with more than "conclusory" statements. *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). The OPEN FOIA Amendment imposes additional requirements on Defendant, which DOL wholly fails to address. 5 U.S.C. 552(a)(8)(A)(i)-(ii). The government provides no explanation as to why there are no the records that can be disclosed with redactions, Gov. Br. at 12, and it is entirely unclear how the records are "inextricably intertwined." *Id.* While Plaintiffs assert that all the records can and should be disclosed in full, to the extent exempt portions exist, redactions are appropriate—as has been done in other circumstances. *Am. Small Bus. League v. Dep't of Def.*, 372 F. Supp. 3d 1018, 1033 (N.D. Cal. 2019).

## IV.    CONCLUSION

For the foregoing reasons, the DOL's motion for summary judgment should be denied, and CIR's cross motion for summary judgment should be granted.

DATED: October 15, 2019                    Respectfully submitted,

                                           D. Victoria Baranetsky
                                           THE CENTER FOR INVESTIGATIVE REPORTING
                                           1400 65th St., Suite 200
                                           Emeryville, CA 94608
                                           vbaranetsky@revealnews.org
                                           Telephone: (510) 982-2890

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.