1
2
3    **UNITED STATES DISTRICT COURT**
4    **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
5    **OAKLAND DIVISION**
6    THE CENTER FOR INVESTIGATIVE          )    Case No. 4:18-cv-02414-DMR
     REPORTING and JENNIER GOLLAN,         )
7                                          )    Case Assigned for All Purposes to Magistrate
                                           )    Judge Donna M. Ryu
8                          Plaintiffs,     )
                                           )
9          v.                              )    **DECLARATION OF MARGARET (PEG)**
                                           )    **SEMINARIO IN SUPPORT OF**
10   UNITED STATES DEPARTMENT OF           )    **OPPOSITION TO DEFENDANT'S**
     LABOR,                                )    **MOTION FOR SUMMARY JUDGMENT**
11                                         )    **AND CROSS MOTION FOR SUMMARY**
                           Defendant.      )    **JUDGMENT**
12                                         )
                                           )
13                                         )
                                           )
14                                         )
                                           )
15   ─────────────────────────────────────
16
17
18
19
20
21
22
23
24
25
26
27
28

# DECLARATION OF MARGARET (PEG) SEMINARIO, MS

I, Margaret (Peg) Seminario, declare as follows:

1.     I am an occupational safety and health professional, and until my retirement in June 2019, served as Director of Safety and Health at the AFL-CIO, the labor federation in the United States representing 55 national and international unions and 12.5 million workers.

2.     I am trained as an industrial hygienist and have a Master of Science degree from the Harvard University School of Public Health. I began my career at the AFL-CIO in 1977, and was appointed Director of Safety and Health in 1990. I have more than four decades of experience working on a wide range of safety and health policies, regulations, and legislation. I have participated in the rulemakings on dozens of regulations and standards promulgated by the Occupational Safety and Health Administration (OSHA). I have served on numerous federal advisory committees including the National Advisory Committee on Occupational Safety and Health (NACOSH) and the Bureau of Labor Statistics (BLS) Labor Research Advisory Committee.

3.     Since the early 1980s, I have had extensive and ongoing involvement in OSHA's injury and illness recordkeeping and reporting regulations and initiatives, as well as the BLS's occupational injury and illness health statistical surveys and programs. I have served on a number of expert panels that have examined occupational injury and illness recording and reporting and the use of injury data for OSHA regulatory and enforcement purposes. From 1984-1986, I was a member of the National Academy of Sciences Panel on Occupational Safety and Health Statistics that examined and recommended improvements in the federal government's occupational injury and illness recording, reporting, and statistical systems. *See* National Research Council, *Counting Injuries and Illnesses in the Workplace: Proposals for a Better System* (1987), https://doi.org/10.17226/18911.

4. In 1987, I participated in a national policy dialogue, convened by the Keystone Center, with representatives from labor, management, government, and health and safety professional organizations, on occupational injury and illness recording and reporting that developed consensus recommendations for improving recordkeeping and data collection. *See* The Keystone Center, *Keystone National Policy Dialogue on Work-Related Illness and Injury Recordkeeping* (1989).

5. Most recently, from 2016-2018, I was a member of the National Academies of Sciences, Engineering, and Medicine Committee on Developing a Smarter Surveillance System for Occupational Safety and Health in the 21st Century that recommended improvements in occupational injury and illness data collection. *See* National Academies of Sciences, Engineering, and Medicine, *A Smarter Surveillance System for Occupational Safety and Health in the 21st Century* (2018), https://doi.org/10.17226/24835.

6. I have participated in all of the OSHA rulemakings on injury and illness recordkeeping and reporting since the early 1980s, including filing comments on the proposed rule and participating in public meetings on OSHA's regulation titled, "Improve Tracking of Workplace Injuries and Illnesses," 81 Fed. Reg. 29624 (May 12, 2016) and subsequent rulemakings in 2017 and 2018 to revise that regulation.

7. I have great familiarity with requesting, reviewing, and utilizing injury and illness data collected by OSHA under the OSHA Data Initiative (ODI) and by BLS under the Annual Survey of Occupational Injuries and Illnesses.

**A. Background of OSHA's Recordkeeping and Reporting Requirements and Public Disclosure of Injury and Illness Data**

8. The Occupational Safety and Health Act of 1970 required the Secretary of Labor to issue regulations to make and maintain records of work-related injuries and illnesses. It also

required the Secretary to compile accurate statistics on occupational injuries and illnesses and to make periodic reports on such occurrences. In implementing the Act, OSHA was given the responsibility to develop recordkeeping regulations and BLS was delegated with collection.

9. OSHA issued its first injury and illness recordkeeping regulations in 1971. The regulations required covered employers to maintain a log of occupational injuries and illnesses, a supplemental record with the details of each injury and illness, and an annual summary of occupational injuries and illnesses. These records were required to be made available to OSHA and other government agencies and the log and annual summary made available to employees and employee representatives. The regulations also required that the annual summary be posted in the workplace for a specified period of time. Over the years, OSHA has updated its injury and illness recordkeeping regulations several times. These updates have modified criteria and expanded employee and employee representatives' access to the records and the length of time the annual log summary must be posted in the workplace (from one month to three months). But the basic structure of the recordkeeping system has been maintained.

10. OSHA's lack of access to establishment-specific injury and illness data made it impossible to identify workplaces with high injury rates and to target its enforcement.

11. To address this limitation, in 1987, the National Academy of Sciences report, *Counting Injuries and Illnesses in the Workplace: Proposal for a Better System*, suggested that an administrative data system based on the OSHA logs might be a feasible alternative to the BLS statistical program. I was a member of the panel that issued this report.

12. In 1989, the Keystone National Policy Dialogue on Work-Related Injuries and Illnesses, in which I participated, recommended that OSHA develop a targeting system that used injury and illness data to target high-risk industries and individual workplaces for inspections. The OSHA form 101 (now supplanted by the form 301) was recommended as a source of information.

13.     In the 1990s, in response to these expert recommendations, both OSHA and BLS took steps to improve occupational injury and illness recording and reporting. 61 Fed. Reg. 4030 (Feb. 2, 1996), and finalized in January 2001, 66 Fed. Reg. 5916 (Jan. 19, 2001).

14.     In 1996, OSHA initiated the OSHA Data Initiative (ODI), which collected establishment-specific injury and illness data from 80,000 establishments in high hazard industries. Under the ODI, OSHA required selected employers to report to OSHA data from the annual log summary (number of total injuries, injuries resulting in days away from work, and injuries resulting in lost-time or restricted activity) along with the employer name, address, average employment, and hours worked—the same information OSHA now requires under the 2016 reporting rule.

15.     The final regulation issued in 2001 modified injury recording criteria. It updated the OSHA injury reporting forms, re-designating the log as the Form 300, the log summary as the Form 300A, and the detailed injury case report as the Form 301. 29 C.F.R. § 1904.29. The final regulation also extended the time period for posting the annual summary in the workplace from one to three months, *Id.* § 1904.32, and expanded employee and employee representatives' access to injury records, by making parts of the Form 301 detailed injury case reports without confidential medical information available for examination and copying. *Id.* § 1904.35. There were no restrictions on employees or employee representatives sharing this data. The regulation maintained the right of OSHA to access injury and illness records. *Id.* § 1904.40. It also maintained the requirements that employers submit injury and illness data to OSHA and BLS, upon request, for use in the ODI and BLS annual surveys. *Id.* §§ 1904.41, 1904.42.

16.     OSHA used this information for targeting its enforcement programs and developing its site-specific targeting (SST) plan that lists individual establishments for targeting the agency's outreach and programmed inspections. The ODI data collection was carried out from 1996 until 2012, when OSHA decided to develop a new electronic injury reporting system.

17.     Since 2004, subsequent to the decision in the *New York Times* case ruling that the data was not covered by a FOIA exemption, the AFL-CIO has requested and received, or accessed on the OSHA website, the complete list of employers reporting under the ODI, including employer name, address, industry code and injury rate.

18.     The AFL-CIO shared this information with our national unions as well as state and local federations in order to identify employers with high rates of injuries to assist union members in addressing safety and health hazards at workplaces. Starting in 2007, this data was made available on a searchable website maintained by the AFL-CIO's community affiliate that also included company-specific information on OSHA and other labor law violations. All of this data came from OSHA and other agencies in response to FOIA requests.

19.     Subsequent to the *New York Times* decision, OSHA also posted the data files of the information collected from individual employer establishments on the OSHA website. The files included employer name, address, industry classification code, and the associated Total Case Rate (TCR), Days Away, Restricted, and Transfer (DART) case rate, and the Days Away From Work (DAFWII) case rate for the establishments that reported to OSHA.

20.     OSHA provided this establishment injury rate data to the AFL-CIO and posted it on the agency FOIA website while the data was being used in its SST program. For example, on November 16, 2009, OSHA posted the establishment-specific injury rate data for 2007, collected in the 2008 ODI, on its website https://www.osha.gov/foia/foia-111609. This was concurrent with OSHA using the same injury rate data for its 2009 SST program. https://www.osha.gov/sites/default/files/enforcement/directives/CPL_02_09-05.pdf

21.     In January 2010, OSHA made the same establishment-specific injury and illness data collected under the ODI from 1996 to 2007 available on a searchable website, https://www.osha.gov/pls/odi/establishment_search.html, and a centralized government website,

https://www.data.gov/. These web sites are still operational and now include injury and illness data from 1996 to 2011 collected under the ODI.

**B. Background on the OSHA Electronic Injury and Illness Reporting Rule (Improve Tracking of Workplace Injuries and Illnesses).**

22. In 2010, OSHA began to explore the development of an electronic injury reporting system to replace the ODI. The development of an electronic reporting system was spurred by then OSHA Assistant Secretary David Michaels and the Open Government Initiative.

23. In 2010, OSHA issued an advance notice of proposed rulemaking (ANPRM) on developing an electronic injury reporting system and held three public meetings with stakeholders to get input and comments on the design of the system. 75 Fed. Reg. 24505 (May 5, 2010). As noted in the ANPRM, the rationales for creating such a system included the limited data that was collected under the ODI (only summary data which did not identify specific types of hazards in a given establishment), and the two or three year time lag in the data between the occurrence and use of the data. In the ANPRM, OSHA also stated it was exploring whether making public the up-to-date, establishment-specific injury and illness data collected by OSHA would "encourage innovative ideas and allow employers, employees, and researchers to participate in improving occupational safety and health." 75 Fed. Reg. 24507.

24. On November 8, 2013, OSHA issued the Proposed Rule: Improve Tracking of Workplace Injuries and Illnesses. The rule proposed that establishments in designated high-hazard industries with 20 or more employees submit data from the summary log of injuries and illnesses to OSHA on an annual basis. In addition, establishments with 250 or more employees who were required to maintain OSHA injury records were to also submit on a quarterly basis all of the information contained in these records (the OSHA 300 log and form 301 incident reports).

25. In the preamble to the rule, OSHA made clear that it intended to post the data online and make it available to the public: "In addition, OSHA plans to post the injury and illness data online." 78 Fed. Reg. 67253, 67258 (Nov. 8, 2013). The preamble also outlined the data elements that OSHA intended to make public. For the 300A summary information, the agency stated that it planned to make all of the data elements public. *Id.* at 67259.

26. The AFL-CIO filed written comments in this rulemaking (OSHA-2013-0023-1350), and participated in the public hearing convened on January 9-10, 2014, where it advocated that OSHA make the data publicly available (except workers' private information).

27. The AFL-CIO explained that releasing injury and illness data collected under the electronic reporting rule will assist employers and workers in their prevention efforts. Employers can use this information to benchmark their performance against other employers in the industry. Workers can use this information to compare the injury records of their workplace with other workplaces, and more detailed injury and illness data from the OSHA Log 300s and Form 301s can be used to help workers identify the specific injuries that are occurring, and assist with prevention.

28. The AFL-CIO also pointed out in our comments that public access to the data can also aid research on workplace injuries and illnesses and assist prevention efforts.

29. OSHA issued the Final Rule: Improve Tracking of Workplace Injuries and Illnesses in May 2016. 81 Fed. Reg. 29624 (May 12, 2016). The reporting requirements in the final rule were similar to those in the proposed rule, except that the reporting of the OSHA Log 300 and Form 301s by establishments with 250 or more employees was required annually, not quarterly.

30. The 2016 final rule established an initial deadline of July 1, 2017 for covered establishments to submit the information from the 2016 Form 300A, and a deadline of July 1, 2018 to submit the information from the 2017 Form 300A, 300 and 301. Beginning in 2019, covered establishments were required to submit the required information by March 2 on an annual basis.

29 C.F.R. § 1904.41(c). The preamble of the 2016 final rule again made clear that OSHA intended to make all of the data collected, except for information that could be used to identify individual employees, publicly available: "OSHA intends to post the establishment-specific injury and illness data it collects under this final rule on its public Web site at www.osha.gov." *Id.* at 29625.

31. Beginning in 2017, OSHA revisited and made changes to the 2016 final electronic reporting rule and its implementation. First, on June 28, 2017, OSHA proposed to delay the deadline for the submission of the information from the Form 300A from July 1, 2017 until December 1, 2017, 82 Fed. Reg. 29261 (June 28, 2017), and on November 24, 2017, OSHA issued a final rule delaying the initial deadline for submission of the Form 300A information until December 15, 2017. 82 Fed. Reg. 55761 (Nov. 24, 2017).

32. On July 30, 2018, OSHA issued a proposed rule to amend the 2016 reporting rule to remove the requirement that larger establishments with 250 or more employees to submit the OSHA Forms 300 and 301 to OSHA on an annual basis. 83 Fed. Reg. 36494 (July 30, 2018). On January 25, 2019, OSHA finalized this rule, revoking the requirement for the reporting of the Form 300 and 301 information. 84 Fed. Reg. 380 (Jan. 25, 2019). The 2019 amendment did not change the requirement for employers to submit the Form 300A information.

**C. Prior to January 2017, OSHA intended to make the injury and illness data public in a timely way.**

33. From the beginning of the development of the electronic reporting system, OSHA was clear that one of the main drivers behind the electronic reporting system was to collect and utilize up to date injury and illness data, instead of relying on data that was several years old, as was the case in the ODI. The agency was also clear that it intended to make this data public.

34. There was never any discussion or suggestion during the development the 2016 final rule that OSHA planned to delay the release of the data to the public. *See* OSHA, *Supporting*

*Statement for the Information Collection Requirement on Recordkeeping and reporting*

*Occupational Injuries and Illnesses (29 CFR Part 1904), OMB Control No. 1218-0176, available*

*at* https://www.reginfo.gov/public/do/DownloadDocument?objectID=64517902.

35.     The only information that OSHA ever stated would be withheld from public release was data that could reveal personally identifiable information (PII)—information that would reveal an *individual employee's* identity.     However, the OSHA Form 300A summary log data is aggregated data and does not contain any PII or employee identifiers. 81 Fed. Reg. at 29650.

36.     In 2017, OSHA changed its position that the data collected from the OSHA Form 300A should be made public and its long-time practice of releasing similar data in response to FOIA requests.  In response to a series of FOIA requests, OSHA declined to release information collected from the Form 300A on the basis that the agency now views the 300A data as confidential commercial information, exempted from release under FOIA.  This is a change in the position set forth by OSHA in the preamble of the 2016 final electronic injury reporting rule where OSHA stated: "In response, OSHA notes that, as discussed in the preamble to the proposed rule, the information required to be submitted by employers under this final rule is not a kind that would include confidential commercial information." 81 Fed. Reg. 29658.

**D. Releasing the data at this time will not lower compliance with the recordkeeping and reporting requirements or impair the operation of OSHA's targeting program.**

37.     As discussed above, for decades OSHA routinely and regularly released data to the public collected under the ODI starting in 2004 with the injury rates of all the firms reporting in the ODI.  The data was released to the public, and posted on OSHA's website, concurrent with its use by OSHA in its SST program.  There was no evidence that the collection or routine release of data impaired OSHA's enforcement or the harmed the companies.

38.     At no time during the entire period that the 2016 electronic reporting rule was being developed (2010–2016), in any public meeting, in any request for comment, in any ANPRM, in any proposed rule or in the final rule, did OSHA raise a concern that releasing data would undermine recordkeeping or its enforcement programs.

39.     Based on OSHA's long history of releasing the data under the ODI, there is no reason to believe that release and posting of the summary Form 300A data under the new electronic recordkeeping system—which is exactly the same type of information that was submitted under the former ODI—will lower compliance with recordkeeping requirements or injure companies.


Executed October 9, 2019, in Bethesda, Maryland.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

_____
Margaret (Peg) Seminario