DAVID L. ANDERSON (CABN 149604)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
PAMELA T. JOHANN (CABN 145558))
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36045
    San Francisco, California 94102
    Telephone: (415) 436-7025
    Facsimile: (415) 436-7234
    pamela.Johann@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and JENNIFER GOLLAN,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>    Defendant. | Case No. 4:18-cv-02414-DMR<br><br>**SUPPLEMENTAL DECLARATION OF PATRICK J. KAPUST IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

I, Patrick J. Kapust, declare as follows:

1. In its motion for summary judgment, the Center for Investigative Reporting ("CIR") asserts that information collected under OSHA's rule to Improve Tracking of Workplace Injuries and Illnesses (the "Regulation") is not confidential commercial information under the FOIA because OSHA previously released injury and illness information collected, for example, under the OSHA Data Initiative (the "ODI"). CIR also relies on statements by OSHA, during the 2016 rulemaking promulgating the rule to Improve Tracking of Workplace Injuries and Illnesses (the "Regulation"), and by Dr. David Michaels, OSHA's former Assistant Secretary, for example, that it had been OSHA's intent to release data submitted electronically under the Regulation.

2. From 1997 to 2012, OSHA conducted injury and illness surveys of employers, and collected establishment-specific injury and illness data, through the ODI. Typically, there were over 180,000 unique establishments subject to participation in the ODI. The ODI was designed so that each eligible establishment received the ODI survey at least once every three-year cycle. In a given year, OSHA would send the ODI survey to approximately 80,000 larger establishments (20 or more employees) in selected industries. These establishments were required to participate in the survey and faced potential citation and fines if they failed to comply.

3. OSHA's decision to release the ODI and other injury and illness information in the past was premised on its understanding of then-applicable judicial precedent holding that the information was not confidential commercial information under the FOIA because release of the information would not cause a competitive harm to employers, under what was called the "competitive harm" prong of the then-applicable legal test for determining the applicability of Exemption 4 to the FOIA. (See 81 Fed. Reg. 29624, 29657-29658 (May 12, 2016) (preamble to Regulation)).

4. OSHA promulgated the Regulation in 2016. The Regulation requires certain categories of employers to electronically submit to OSHA, on an annual basis, information from certain recordkeeping forms that OSHA requires be kept by the employers, including OSHA Form 300A Summary of Work-Related Injuries and Illnesses. OSHA Form 300A contains, and data collected under the Regulation includes, injury and illness information.

5. After Dr. Michaels left the Agency in January 2017, OSHA determined, based on the sustained objection to public release of the data collected under, and the lower-than-expected compliance with, the Regulation (see Declaration of Patrick J. Kapust ¶¶ 12-22), that release of the data submitted electronically under the Regulation would not be consistent with another prong of the then-applicable test for determining the applicability of Exemption 4 to the FOIA, the "compliance and program effectiveness" prong. After determining this, OSHA assessed that it could release data submitted electronically under the Regulation, but only when it finished using it to target employers for inspection – approximately four years after the year to which the data relates. OSHA reasoned that releasing the data before OSHA finished using it to target employers for inspection would impair the

effectiveness of OSHA's inspection targeting programs, and releasing the data after OSHA finished using it to target employers for inspection would not impair the effectiveness of OSHA's inspection targeting programs.

6. When the Supreme Court issued its decision in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2365 (2019) ("*Argus Leader*"), OSHA had not yet implemented its intended release of data that was approximately four years old, and based on *Argus Leader,* determined that release of the 300A data submitted under the Regulation would not be consistent with the new test established by that decision for determining the applicability of Exemption 4 to the FOIA. OSHA has not yet determined how, or whether, *Argus Leader* impacts the ultimate release of the data (for example, whether *Argus Leader* prevents release of the data even when OSHA finishes using it to target employers for inspection – approximately four years after the year to which the data relates).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct hereto. Executed this 5th day of November, 2019.

_____
PATRICK J. KAPUST
Acting Director, OSHA Directorate of
Enforcement Programs