UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE CENTER FOR INVESTIGATIVE REPORTING, et al.,

Plaintiffs,

v.

DEPARTMENT OF LABOR,

Defendant.

Case No. 18-cv-02414-DMR

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 26, 30

Plaintiffs Center for Investigative Reporting and Jennifer Gollan filed this action for injunctive relief pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against Defendant Department of Labor. The parties filed cross motions for summary judgment. [Docket Nos. 26, 30.] The court held a hearing on December 12, 2019 and ordered Defendant to file supplemental evidence. [Docket 39.] Defendant timely filed the requested evidence. [Docket No. 40.] For the following reasons, Plaintiffs' motion is granted in part. Defendant's motion is denied.

## I. BACKGROUND

### A. Plaintiffs' FOIA Request

The Occupational Safety and Health Act of 1970 (the "Act"), 29 U.S.C. § 651 et seq., was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions . . . ." 29 U.S.C. § 651(b). "To that end, Congress authorized the Secretary of Labor to set mandatory occupational safety and health standards applicable to all businesses affecting interstate commerce." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96 (1992) (citing 29 U.S.C. § 651(b)(3). The Occupational Safety and Health Administration ("OSHA"), a division of the Department of Labor ("DOL"), promulgates and enforces these

standards, as well as regulations that require "employers to maintain accurate records of, and to make periodic reports on, work-related deaths, injuries and illnesses . . ." 29 U.S.C. § 655, 657(c)(2).

Pursuant to DOL's statutory authority to "develop and maintain an effective program of collection, compilation, and analysis of occupational safety and health statistics," 29 U.S.C. § 673(a), "OSHA requires employers with more than 10 employees to use a set of standardized forms when recording workplace injuries and illnesses—Form 300 to generate a log of all work-related injuries or illnesses, Form 301 to generate an incident report for each individual case, and Form 300A to prepare an annual summary derived from the information collected on the log." *Pub. Citizen Health Research Grp. v. Acosta*, 363 F. Supp. 3d 1, 7 (D.D.C. 2018) (citing 29 C.F.R. §§ 1904.1(a), 1904.29). In 2016, OSHA issued a final rule requiring certain employers to electronically submit the three forms to OSHA on an annual basis. *See Improve Tracking of Workplace Injuries and Illnesses*, 81 Fed. Reg. 29624-01, 29692 (May 12, 2016); 29 C.F.R. § 1904.41. Under the rule, employers with 250 or more employees must electronically submit Forms 300, 300A, and 301 to OSHA each year, and employers in certain industries with 20 or more employees must electronically submit Form 300A. 29 C.F.R. § 1904.41(a). In the final rule, OSHA wrote that "OSHA intends to post the data from these submissions on a publicly accessible Web site," but "does not intend to post any information on the Web site that could be used to identify individual employees." *Improve Tracking of Workplace Injuries and Illnesses*, 81 Fed. Reg. 29624-01, 29624. OSHA began collecting data under the rule in 2017. [Docket No. 28 (Kapust Decl., Sept. 6, 2019) ¶ 6.]

The Center for Investigative Reporting ("CIR") is a nonprofit investigative news organization that publishes *Reveal*, an online news site, and produces a weekly public radio show by the same name. Gollan is a staff reporter for *Reveal* and a CIR employee. Compl. ¶¶ 10, 11. On January 31, 2018, Plaintiffs submitted the following request for information from OSHA pursuant to FOIA: "[A]ll data submitted since August 1, 2017 through OSHA's 'Injury Tracking Application' pursuant to the final Rule 'Improve Tracking of Workplace Injuries and Illnesses.' Please include electronically submitted information from OSHA Forms 300, 300A, and 301."

[Docket No. 27 (Edens Decl., Sept. 5, 2019) ¶ 4, Ex. A (FOIA Request).]

OSHA processed Plaintiffs' FOIA request and initiated a search on February 6, 2018. Edens Decl. ¶ 10. Its search yielded approximately 237,000 records of OSHA Form 300A information submitted from August 1, 2017 through the date of its search, February 6, 2018. It did not find records pertaining to OSHA Forms 300 or 301. *Id.* at ¶ 11. In its February 22, 2018 response to Gollan, OSHA wrote that it had identified approximately 237,000 records responsive to the FOIA request and that it had determined that the responsive records were fully exempt from production under FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E). Edens Decl. ¶ 5, Ex. B (DOL Response). Section 522(b)(7)(E) exempts the following "law enforcement" records from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]

5 U.S.C.A. § 552(b)(7)(E). The response further stated that "OSHA does not have any records pertaining to OSHA Forms 300 or 301"[1] and informed Gollan of her appeal rights. DOL Response.

Plaintiffs appealed the agency's decision on March 1, 2018. Edens Decl. ¶ 6, Ex. C. DOL acknowledged receipt of Plaintiffs' appeal by letter dated March 16, 2018. Edens Decl. ¶ 7, Ex. D. After DOL failed to make a determination on Plaintiffs' appeal within the statutory timeframe, *see* 5 U.S.C. § 552(a)(6)(A)(ii), Plaintiffs filed this lawsuit on April 23, 2018. *See* Compl. ¶¶ 39-41.

The parties filed cross motions for summary judgment. DOL now contends that it properly withheld the Form 300A information pursuant to FOIA Exemption 4, 5 U.S.C. § 552(b)(4), which

---

[1] In May 2018, OSHA announced that it was not accepting Forms 300 and 301, and subsequently issued a notice of proposed rulemaking to rescind the electronic filing requirements for those forms. *Public Citizen*, 363 F. Supp. 3d at 8; *Tracking of Workplace Injuries and Illnesses*, 83 Fed. Reg. 36494-01 (July 30, 2018).

in relevant part exempts "commercial or financial information [that is] obtained from a person and [is] privileged or confidential." DOL no longer invokes FOIA Exemption 7(E). DOL also asserts that it made an adequate search for the requested information. Plaintiffs dispute the applicability of Exemption 4 to the information contained in the Form 300As, argue that DOL has not satisfied the heightened standard for withholding under 5 U.S.C. § 552(a)(8)(A), and challenge the adequacy of DOL's search.

**B. Form 300A**

Form 300A requests information regarding workplace safety. Under the heading "Number of Cases," employers fill in blank spaces to list the total number of deaths; total number of cases with days away from work; total number of cases with job transfer or restriction; and total number of other recordable cases. Edens Decl. ¶ 13, Ex. E (blank Form 300A). Under the heading "Number of Days," employers must list the total number of days away from work and total number of days of job transfer or restriction. Under the heading "Injury and Illness Types," employers must break down the specific work-related injuries and illnesses, including listing the total number of injuries; skin disorders; respiratory conditions; poisonings; hearing loss; and all other illnesses. The employer must also provide the establishment information; industry description and industrial classification; annual average number of employees; and total hours worked by all employees in the prior year. *Id.* The form contains a space for the signature of a "company executive" to certify that the information on the form is "true, accurate, and complete."

**II. LEGAL STANDARDS**

"FOIA 'was enacted to facilitate public access to Government documents.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). Its "'core purpose' is to inform citizens about 'what their government is up to.'" *Yonemoto v. U.S. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 775 (1989)). Congress structured FOIA so that an agency must disclose records "to any person . . . unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b)." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989) (citation and quotation marks

omitted); *accord Maricopa Audubon Soc. v. U.S. Forest Serv*., 108 F.3d 1082, 1085 (9th Cir. 1997). These exemptions are "explicitly exclusive" and "must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy." *Maricopa*, 108 F.3d at 1085 (citations and quotations omitted).

"FOIA's strong presumption in favor of disclosure places the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015). Further, "[a] basic policy of FOIA is to ensure that Congress and not administrative agencies determines what information is confidential." *Lessner v. U.S. Dep't of Commerce*, 827 F.2d 1333, 1335 (9th Cir. 1987). For this reason, courts do not give deference to a federal agency's determination that requested information falls under a particular FOIA exemption. *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007). If an agency determines that an exemption applies, the agency "may withhold only that information to which the exemption applies" and "must provide all 'reasonably segregable' portions of that record to the requester." *Yonemoto*, 686 F.3d at 688 (quoting § 552(b)).

FOIA cases are typically decided on motions for summary judgment as the facts are rarely in dispute. *See Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996). On a motion for summary judgment, district courts analyze the withholding of agency records de novo. 5 U.S.C. § 552(a)(4)(B).

## III. DISCUSSION

### A. Whether the Form 300A Information is Exempt from Disclosure Under Exemption 4

Exemption 4 exempts from disclosure "trade secrets and commercial or financial information [that is] obtained from a person and [is] privileged or confidential." 5 U.S.C. § 552(b)(4). In order to invoke the exemption, a "government agency must demonstrate that the information it sought to protect is '(1) commercial and financial information, (2) obtained from a person or by the government, (3) that is privileged or confidential.'" *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011) (quoting *GC Micro Corp. v. Defense Logistics Agency,* 33 F.3d 1109, 1112 (9th Cir. 1994)).

DOL asserts that the information contained in the Form 300As falls within Exemption 4

United States District Court
Northern District of California

because it is commercial information that was obtained from a person and is confidential.[2] Plaintiffs dispute that Exemption 4 applies to the withheld information. They argue that the information at issue is neither "confidential" nor "commercial" within the meaning of the exemption.[3]

In *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019), the Supreme Court held that commercial or financial information is "confidential" within the meaning of Exemption 4 "where [the information] is both [1] customarily and actually treated as private by its owner and [2] provided to the government under an assurance of privacy[.]" The Court considered whether both of these enumerated conditions must be satisfied in order for information to be considered confidential. It held that "[a]t least the first condition has to be," reasoning that "it is hard to see how information could be deemed confidential if its owner shares it freely." *Id.* at 2363. The Court found it unnecessary to resolve the question of whether "privately held information [can] *lose* its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private[.]" *Id.* (emphasis in original).

Here, DOL argues that the Form 300A information is confidential because it is "customarily and actually treated as private by its owner[s]." Def.'s Mot. 14 (quoting *Food Marketing*, 139 S. Ct. at 2366). In support, it points to comments by employers and trade groups during the 2014 rulemaking process stating that "they consider the submitted data to be confidential commercial information" and expressing concerns about the potential for harm if the information is released. Def.'s Mot. 15; Kapust Decl. ¶¶ 12-15. According to DOL, these comments "represent[ ] a prevailing view that the submitters consider the subject data confidential." Def.'s Mot. 15. However, as *Food Marketing* makes clear, the court must examine

---

[2] At the hearing, DOL clarified that it does not contend that the information contained in the Form 300As is "financial information" within the meaning of Exemption 4. It also does not argue that the information constitutes trade secrets. Def.'s Mot. 12 n.6.

[3] FOIA defines the term "person" to include "an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2). Plaintiffs do not dispute that DOL has established that the information was provided by a "person."

whether the information actually is kept and treated as confidential, not whether the submitter considers it to be so. *See Food Marketing*, 139 S. Ct. at 2363 ("[i]n one sense, information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it."). *Food Marketing* involved store-level Supplemental Nutrition Assistance Program ("SNAP") data. The Court concluded that the information was confidential within the meaning of Exemption 4 because the owners of the SNAP data customarily kept and treated the information as confidential. The evidence showed that the owners "customarily do not disclose" the information or "make it publicly available 'in any way,'" and that "[e]ven within a company . . . only small groups of employees usually have access to it." 139 S. Ct. at 2363.

In contrast, here, the rulemaking comments relied upon by DOL reflect the owners' subjective view of the nature of the information, which is not the test for confidentiality under *Food Marketing*. The comments do not speak to how the owners keep and treat the Form 300A information; instead, they focus on the reasons why the owners oppose the release of the information. Therefore, the comments are minimally probative.[4]

Moreover, the Form 300A information differs significantly from the SNAP data at issue in *Food Marketing*. Here, submitting companies are required by law to make the Form 300A information available to current and former employees. Specifically, employers are required to post their completed Form 300As "in a conspicuous place or places where notices to employees are customarily posted" for a period of at least three months of the year following the year covered by the records. 29 C.F.R. § 1904.32(b)(5), (6). Employers must also preserve their Form 300As for five years and disclose the reports to current and former employees and their personal representatives upon request at no charge. *Id*. at §§ 1904.33, 1904.35(b)(2).[5] There are no

[4] In fact, OSHA itself overruled commenters' concerns about disclosure when it promulgated the final rule in 2016. OSHA noted that it "does not agree that the publishing of recordkeeping data under this final rule will be misleading or that the public will misinterpret the data" and stated that it "intends to post the data from these submissions on a publicly accessible Web site." *Improve Tracking of Workplace Injuries and Illnesses*, 81 Fed. Reg. 29624-01, 29624, 29649.

[5] DOL attempts to minimize the effect of the Form 300A disclosure requirements by asserting that employees are only entitled to the data that covers the period of their employment. Def's Opp'n 9,

restrictions on further dissemination of Form 300A information; as OSHA explained in its final rule in 2016, "[e]mployees or their representatives can . . . obtain and make public most of the information from these records at any time, if they wish." *Improve Tracking of Workplace Injuries and Illnesses*, 81 Fed. Reg. 29624-01, 29,684. Therefore, the Form 300A information is both readily observable by and shared with employees, who have the right to make the information public. In contrast, *Food Marketing* concluded that the SNAP data had been customarily kept and treated as confidential because the owners "customarily do not disclose" the information or "make it publicly available 'in any way,'" and "[e]ven within a company . . . only small groups of employees usually have access to it." *See Food Marketing*, 139 S. Ct. at 2363 ("it is hard to see how information could be deemed confidential if its owner shares it freely.").

As noted, *Food Marketing* left open the question of whether the government must also provide an assurance of privacy in order for information to be deemed confidential under Exemption 4. *See* 139 S. Ct. at 2363. The parties dispute the applicability of such a requirement. *See* Def.'s Mot. 21-24; Pls.' Mot. 20. To the extent the requirement exists, DOL cannot satisfy it because OSHA expressly stated in rulemaking in 2016 that it would "post the data" from the electronic submissions of Forms 300, 301, and 300A "on a publicly accessible Web Site." DOL disputes the significance of OSHA's 2016 statement. It asserts that "at least since November of 2017, OSHA has taken the position that the Form 300A data should be kept private," and that this change in position took place around the time that employers were due to submit the first set of forms. *See* Kapust Decl. ¶ 6 (noting that the first set of Form 300A data was due to OSHA by December 15, 2017). DOL suggests that the timing of these statements demonstrates that OSHA changed its position before companies began submitting Form 300As. Def.'s Mot. 24, Def.'s Opp'n 13. However, the cited evidence does not support such an inference. Instead, the evidence shows the following sequence of events: (1) OSHA asserted Exemption 4 as a basis for

citing 29 C.F.R. § 1904.35. However, the cited regulation contains no such provision, and Plaintiffs submitted an email dated May 13, 2019 from OSHA's Office of Communications confirming that section 1904.35 gives any employee, former employee, personal representative, or authorized employee representative the right to a copy of the current *and* stored Form 300As. [Docket No. 36-1 (Baranetsky Decl., Nov. 26, 2019) ¶ 7, Ex. 5.]

withholding Form 300A information in June 2018 in a FOIA lawsuit pending in the United States District Court for the District of Columbia; (2) OSHA withheld unspecified data in response to requests outside of the FOIA process starting in October 2018; and (3) OSHA publicly announced a change in how it views Form 300A information via a statement on its website in August 2019. *See* Kapust Decl. ¶ 23, Ex. H; *see Public Citizen Foundation v. United States Dep't of Labor*, No. 1:18-cv-00117-EGS-GMH (D.D.C.). Therefore, even if OSHA had changed its position internally as of November 2017, it did not make public statements about that change until June 2018, which is six months after the first deadline for Form 300A electronic submissions.

Moreover, pursuant to Department of Justice guidelines regarding Exemption 4, OSHA's 2016 statement about its intent to post the information online is dispositive of the question of confidentiality. Specifically, the current guidelines provide that information *loses* its character of confidentiality where there is express agency notification that submitted information will be publicly disclosed:

> Of course, such notices [on agency websites] or communications [with submitters] could also explicitly notify submitters of the agency's intention to *publicly disseminate* the information. In those situations, the information, when objectively viewed in context, would be deemed to have lost its "confidential" character under Exemption 4 upon its submission to the government, given that the submitter was on notice that it would be disclosed.

Baranetsky Decl. Ex. 1, Department of Justice, *Exemption 4 After the Supreme Court's Ruling in Food Marketing Institute v. Argus Leader Media* (updated Oct. 7, 2019) (emphasis in original), available at https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media (last visited 5/19/2020). Corresponding guidance regarding Exemption 4 reiterates this, providing that where there are "express or implied indications at the time the information was submitted that the government would publicly disclose the information" and "no other sufficient countervailing factors exist, the submitter could not reasonably expect confidentiality upon submission and so the information is *not* confidential under Exemption 4." Baranetsky Decl. Ex. 2, Department of Justice, *Step-By-Step Guide for Determining if Commercial or Financial Information Obtained From A Person is Confidential Under Exemption 4 of the FOIA* (updated Oct. 7, 2019) (emphasis in original), available at

United States District Court
Northern District of California

https://www.justice.gov/oip/step-step-guide-determining-if-commercial-or-financial-information-obtained-person-confidential (last visited 5/19/2020). Thus, even if DOL had established that the Form 300A information is "customarily and actually treated as private by its owner[s]," the information ceased to be confidential upon submission to the government pursuant to Department of Justice guidelines.[6]

In sum, the court concludes that DOL has failed to establish that the Form 300A information is "both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *See Food Marketing*, 139 S. Ct. at 2366. Accordingly, it has failed to show that the information is confidential within the meaning of FOIA Exemption 4. Given this conclusion, the court does not reach the parties' arguments about whether the Form 300A information is "commercial" within the meaning of the exemption and whether the foreseeable harm standard from 5 U.S.C. § 552(a)(8)(A) is satisfied.

**B. Adequacy of DOL's Search**

Finally, the parties dispute whether OSHA's search for responsive documents was reasonable and adequate.

"FOIA requires an agency responding to a request to 'demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Lahr*, 569 F.3d at 986 (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). "This showing may be made by 'reasonably detailed, nonconclusory affidavits submitted in good faith.'" *Id.* "In evaluating the adequacy of the search, the issue 'is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'" *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015) (emphasis in original) (quoting *Lahr*, 569 F.3d at 987). "The adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995).

In support of its claim that it conducted an adequate search, DOL submitted a declaration

[6] At the hearing, DOL's counsel acknowledged that the court may consider the DOJ guidelines in deciding this case, as those guidelines are directed to federal agencies such as DOL and OSHA.

from Amanda L. Edens, OSHA's Director for the Directorate of Technical Support and Emergency Management. Edens states that she is responsible for responding to FOIA requests on behalf of OSHA. Edens Decl. ¶ 1. As noted, Plaintiffs requested "data submitted . . . through OSHA's 'Injury Tracking Application'" for a certain time frame, including "electronically submitted information from Forms 300, 300A, and 301." FOIA Request. According to Edens, "[a]ll data responsive to the FOIA Request are submitted through and captured in OSHA's Injury Tracking Application ('ITA')," and that "data stored in the ITA are transmitted to the Office of Statistical Analysis ('OSA'), Directorate of Technical Support and Emergency Management on a monthly basis." *Id.* at ¶ 9. OSA then uploads those records into a Microsoft Access database. Edens states that "OSA searched the database to identify the number of records that were responsive" to Plaintiffs' request. *Id.* The search yielded approximately 237,000 records of OSHA Form 300A data submitted from August 1, 2017 through February 6, 2018, the date OSHA initiated its search. *Id.* at ¶ 11(a). According to Edens, "[n]o records pertaining to OSHA Forms 300 or 301 were found in response to the FOIA Request, because [OSHA] is not collecting that information at this time." *Id.* at ¶ 11(b). In a supplemental declaration, Edens explains that "[t]he Agency did not find any OSHA Form 300 or OSHA Form 301 records in its search of the ITA Microsoft Access database" and that "[n]o OSHA Form 300 or OSHA Form 301 records are contained in the ITA Microsoft Access database or in the ITA." [Docket No. 40-1 (2d Edens Decl., Dec. 23, 2019) ¶¶ 5, 6.] She states that "[t]he only responsive records contained in the ITA Microsoft Access database were the 237,000 OSHA Form 300A records found by OSHA during its search." *Id.* at ¶ 7.

The court finds that Edens's declarations are sufficient to establish that OSHA conducted an adequate search that was reasonably calculated to uncover all relevant documents. While OSHA is not required to search every record system, "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby v. U.S. Dep't of Army*,

United States District Court
Northern District of California

920 F.2d 57, 68 (D.C. Cir. 1990). Edens explains that all information responsive to Plaintiffs' request is stored in OSHA's ITA, and that the information is uploaded into a specific database, which "represents the full universe of ITA data collected under the Final Rule 'Improve Tracking of Workplace Injuries and Illnesses'." 2d Edens Decl. ¶ 2. She explains that OSHA searched the database for responsive records and did not find any Form 300 or Form 301 records in its search, and that the only responsive records in the database were the Form 300A records. *Id.* at ¶¶ 5, 7. These declarations provide sufficient detail about the process by which OSHA undertook its search for responsive information. The court concludes that DOL complied with its FOIA obligations regarding a reasonable search.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted in part and DOL's motion for summary judgment is denied. The parties shall meet and confer and submit a proposed judgment within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: June 4, 2020




Donna M. Ryu
United States Magistrate Judge